658 A.2d 404

**Melinda MURRAY, Appellant,**

v.

**Kathleen B. McCANN, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1994.

Filed May 8, 1995.

Joseph M. Fioravanti, Media, for appellant.

M. Gerard Bradley, Media, for appellee.

Before OLSZEWSKI, JOHNSON and HESTER, JJ.

HESTER, Judge:

Melinda Murray appeals the March 25, 1994 judgment entered in her favor in the amount of $2,338.80. The judgment was entered against Kathleen McCann, appellee, follow-

ing a nonjury trial. The first issue presented is whether the trial court used an incorrect standard in determining whether appellant suffered "serious impairment of a bodily function" for purposes of allowing her to recover for non-economic loss against appellee's insurer under 75 Pa.C.S. § 1705. The second issue presented is whether the trial court, sitting as fact finder, erred in concluding appellant had not suffered serious impairment of bodily function. We affirm.

Appellant instituted this personal injury action against appellee on January 29, 1991, alleging that on December 13, 1990, at approximately 6:20 p.m., appellant was crossing North Morton Avenue, Morton, Delaware County when she was struck by the Subaru automobile driven by appellee. Appellant, who was seventeen years old at the time, was taken by ambulance to Taylor Hospital, where she was examined, x-rayed, and released. All x-rays were normal, and there was no bleeding. She was bed-ridden for two weeks, returned to work, and then underwent physical therapy for four months. Thereafter, she consulted an orthopedic surgeon for pain in April, 1991, and August, 1991. Appellant ceased medical treatment after August, 1991. Appellant incurred $7,338.80 in medical bills: $5,000 of those were covered under her first-party coverage.

Appellant's mother had chosen a limited tort option under her policy of insurance. This limited appellant's right to recover for non-economic loss against appellee's insurer. 75 Pa.C.S. § 1705. The case proceeded to trial before a judge on December 7, 1993. The parties entered into a stipulation that the judge, as trier of fact, was to determine whether appellant suffered "serious impairment of bodily function" which would allow her to recover for pain and suffering. Notes of Testimony, 12/7/93, at 6. Thus, after the evidence was presented to the judge, it was stipulated that he would "decide the case from that single issue." *Id.* The parties agreed that appellee's policy limits were $15,000. The trial court had two options: an award of non-economic loss in the amount of $15,000 or an award of only economic loss.

Appellant testified as follows. At the time of the accident, she resided at 512 Morton Avenue, with her mother and sister. She was crossing that street when she was struck by the car. She indicated that her head hit the hood of the car, and she then fell onto the pavement onto her right hip. She stated that she was unconscious after her head struck the hood of the car but also stated that she screamed as soon as she hit the surface of the road. Appellant was released from the hospital after a "few hours" and was confined to the couch "for about a week." *Id.* at 16. She missed work for two and one-half weeks. She treated with her family physician for four months, undergoing physical therapy "at least twice a week." *Id.* at 17.

During this four-month period, appellant experienced pain in her legs, back, neck, and right hip. After four months, the pain in her hip and legs ceased, but the neck and back pain continued. Since therapy aggravated the pain in those areas, she went to see Dr. John H. Chidester in April, 1991, who recommended an exercise routine. She consulted him again in August, 1991, when she ceased all medical intervention since the exercise aggravated her pain.

Appellant still experiences shoulder and neck pain. The extent to which this has interfered with her daily activities was established through her testimony, as follows. Appellant has two jobs and attends college. Prior to the accident, appellant did not engage in vigorous physical exercise because she suffers from athletic asthma. Her neck and back are stiff in the morning and also become stiff at work. Appellant also testified that she suffers from the following symptoms:

A. Sitting, just watching TV, I have to change positions very often. If I go to the movies, it hurts my back and my neck. Even when I take a shower in the morning, I'll—I bought a special showerhead that's adjustable, it has four settings to aim on points at my neck.

Q. Does that help you loosen up for your day?

A. A little, yeah. It's temporary, though.

> Lifting anything heavy, doing the wash, running the vacuum cleaner, getting groceries, lifting the cat litter, that is painful. When I drive, especially in reverse, it's hard to turn my head all the way around.

*Id.* at 29.

A reading of appellant's testimony establishes that with only two exceptions, she engages in all activities which she enjoyed prior to the accident. Those activities are miniature golf and roller skating. With respect to all other activities, she does experience stiffness and pain, but the pain does not stop her from engaging in those activities. She also indicated that the pain is not significant enough to require breaks at work.

The evidence also revealed the following. At both the April, 1991, and August, 1991, examinations with Dr. Chidester, appellant had full range of motion in her neck and back. She told Dr. Chidester in August that she was "doing well." *Id.* at 38. She has taken no medication other than ibuprofen for her pain.

After appellant testified, the depositions of Doctor David Willner, the defense's medical expert, and Dr. Chidester, the plaintiff's medical expert, were admitted into evidence as exhibits. Those depositions indicate the following.

Dr. Chidester first examined appellant on April 24, 1991. He diagnosed her with cervical, dorsal, and lumbar strain syndrome. He indicated that her MRI studies showed that she had one bulging disc, but he was not able to say whether the bulge was related to the accident. He described the disk bulging as "minor or small" and determined that it could be related to normal physiologic variance. Deposition of John H. Chidester, 12/3/93, at 19. He noted that appellant's neck and shoulder blades were tender and that she was not able to "lead a normal life without a measure of pain." *Id.* at 15. In his opinion to a reasonable degree of medical certainty, the pain during her normal activities will be chronic. He recommended an exercise regimen for treatment.

Dr. David L. Willner testified that he reviewed appellant's medical records and examined her on July 9, 1992. Appellant

exhibited tenderness in the shoulder and neck areas, and her range of movement in her neck and head areas was "a bit tight at the extremes." Deposition of David L. Willner, 11/29/93, at 16. He asked appellant to bend forward and laterally and those tests were "within the normal limits." *Id.* His examination of her arms and legs revealed "normal function throughout and my clinical neurological examination was entirely normal." *Id.* Nerve function, muscle strength, sensation, and reflex function tests also yielded normal results. In Dr. Willner's opinion, appellant suffered muscle strain and bruises in the accident, and her injuries will not be permanent.

Based on this evidence, on January 6, 1994, the court rendered a verdict in the amount of $2,338.80 in favor of appellant. On January 19, 1994, appellant moved for judgment notwithstanding the verdict and for a new trial. Judgment n.o.v. was requested on the basis that the trier of fact erred as a matter of law in not concluding that appellant suffered serious bodily impairment since she suffers chronic pain. Appellant also alleged that the court misconstrued section 75 Pa.C.S. § 1705 when it stated that a soft tissue injury never could qualify as a serious impairment of bodily functions. The motion was denied, and this appeal followed.

Appellant raises two issues for our review:[1]

I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT A CHRONIC, DISABLING SOFT TISSUE INJURY COULD NOT BE REGARDED AS A "SERIOUS IMPAIRMENT OF BODY FUNCTION," AND THEREFORE WAS NOT COMPENSABLE UNDER 75 Pa.C.S.A. § 1702, 1705.

II. THE TRIAL COURT'S VERDICT WAS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE.

1. The Pennsylvania Trial Lawyers Association and Pennsylvania Defense Institute have filed amicus curiae briefs on the issue of whether a jury, rather than the trial court, should have decided if appellant suffered serious impairment of bodily function. However, the record is clear that appellant did not assert in the court below and does not raise on appeal the question of whether a jury should have decided this issue. Therefore, we cannot, as requested by amicus curiae, decide that issue in this appeal.

36 

 On February 7, 1990, the Pennsylvania Legislature amended the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A., § 1701, *et seq.*, and the amendments included section 1705, "Election of Tort Options." Section 1705(d) (emphasis added) provides in relevant in part:

> (4) **Limited tort alternative.**—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. *Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss....*

"Serious injury" is defined in section 1702 as a "personal injury resulting in death, serious impairment of a bodily function, or permanent serious disfigurement." 75 Pa.C.S. § 1702. The issue presented is whether the trial court used the correct legal standard in determining whether appellant suffered serious impairment of a bodily function since the parties conceded that she had not suffered disfigurement.

 After a thorough review of the trial court's decision, we conclude that while it made isolated remarks that are in error, it did not apply the incorrect legal standard in determining whether appellant suffered serious impairment of bodily function. The Pennsylvania Legislature modeled this law after the Michigan law. In determining the correct definition for the term at issue, the trial court properly turned to guidance from Michigan's body of case law. The court cited to the leading Michigan case, *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896, 914–15 (1986), and concluded that "the factors" which should be utilized in determining whether a bodily impairment is serious are "the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, [and] the treatment required to correct the impairment." In addition, any other relevant factor may be utilized under the *DiFranco* decision.

The trial court also examined the evidence and analyzed how appellant's injuries interfered with her life. In addition, the trial court reviewed the extent of appellant's impairment, noting that she performs all normal daily activities. It further determined that no particular body function was impaired due to the fact that appellant did do all her normal activities but did so with minor aches and pains.

Moreover, the trial court considered the amount of medical treatment sought by appellant and observed the following. When Dr. Chidester, the last physician to treat appellant, examined appellant, she had full range of motion of the neck and no low back pain. The trial court noted that appellant participates in everyday activities, albeit with stiffness, and that appellant herself testified that she is able to touch her toes and has full range of motion in her neck. In addition, the trial court observed that appellant never wore a neck or back brace and the only medication she took was ibuprofen.

Furthermore, the trial court observed that appellant never was hospitalized, physical therapy was completed after four months, and thereafter appellant had one additional doctor visit eight months after the accident. Finally, it credited Dr. Willner's opinion that the slight limitations on appellant's activities would not be permanent. Trial court opinion, 6/22/94, at 6. In other words, the court examined the evidence on each of the four factors outlined in *DiFranco*.

Appellant focuses on two, isolated statements in leveling a challenge to the analysis employed. She correctly observes that the trial court stated that serious bodily impairment could not be found in the absence of an injury that was objectively manifested. The trial court also stated, along the same lines, that aches and pains never could result in serious bodily impairment. We agree with appellant that these statements are in error. As noted by the court in *DiFranco*, there is no wording in the applicable statutory language which limits recovery of non-economic damages to a plaintiff whose injuries can be seen or felt by a clinical test. The issue, in accordance with the language used, is whether the injuries have seriously impaired bodily functioning.

However, in the present case, immediately after it made this improper remark, the trial court indicated that it understood the correct analysis, again citing to *DiFranco:*

> The Court went on to explain that, "the 'serious impairment of body function' threshold was designed to eliminate suits based on clearly minor injuries, and those injuries which did not seriously affect the ability of the body, in whole or in part, to function." *DiFranco v. Pickard,* 427 Mich. 32, 60, 398 N.W.2d 896, 911 (1986).

Trial court opinion, 6/22/94, at 7.

Thus, we conclude that the trial court used incorrect language at times in its opinion since it is very possible there will be instances where pain is significant enough to interfere seriously with bodily functioning even where only soft tissue injuries have been sustained. However, it also is clear that the two improper statements were not the basis of the trial court's decision. Rather, it examined the evidence, utilized the factors outlined in *DiFranco,* and concluded that appellant's injuries did not seriously impair her functioning. The isolated, incorrect remarks of the trial court do not change the fact that it did outline the factors and discussed the evidence presented on these four factors and then concluded that appellant did not suffer serious impairment of bodily functioning. Indeed, appellant concedes that "the heart" of the trial court's conclusion is its decision that "plaintiff sustained minor injuries which have not affected her ability to function" which is the correct standard. Appellant's brief at 14.

■ We next consider whether the trial court erred when it determined that appellant suffered minor, rather than serious impairment of bodily functioning.[2]

---

**2.** Specifically, appellant argues that the trial court's finding that she did not suffer serious impairment of a bodily function, in light of her uncontested testimony about her chronic pain, is against the weight of the evidence. However, she requests that we reverse that determination and enter judgment in her favor in the amount of $15,000, the policy limits. Appellant's brief at 15. This clearly is a request for judgment notwithstanding the verdict, and we treat this claim as such, even though it is framed as one involving a weight of evidence claim.

Initially, we note our standard of review in this case. The role of an appellate court in reviewing the trial court's final judgment is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law; findings of the trial court in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. *Stahli v. Wittman,* 412 Pa.Super. 281, 603 A.2d 583 (1992); *Reuter v. Citizens & Northern Bank,* 410 Pa.Super. 199, 599 A.2d 673 (1991); *Porter v. Kalas,* 409 Pa.Super. 159, 597 A.2d 709 (1991). When this court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. *Short v. Metropolitan Life Ins. Co.,* 339 Pa.Super. 124, 488 A.2d 341 (1985).

*Olmo v. Matos,* 439 Pa.Super. 1, 6, 653 A.2d 1, 3 (1994).

Under the above standard, we must view the evidence in the light most favorable to appellee, as verdict winner. That evidence includes Dr. Willner's opinion that appellant's pain syndrome will not last.[3] Thus, appellant's argument is incorrect that the testimony of the three witnesses was "uniform as to the nature of the injury, its functional impact and its long term implications." Appellant's brief at 14.

Furthermore, the trial court's finding is supported by the evidence. We will not question that appellant experiences pain. The issue is whether there has been a serious impairment in her functioning as a result of the pain. Appellant stated that she is stiff and sore and that she experiences pain when she lifts heavy loads, but her testimony also establishes that she still performs all her daily activities fully. She does not have to take breaks from work for the pain. Even her

3. We acknowledge that there is nothing in the statute which requires that the impairment be permanent to allow for recovery. However, the length of time an impairment will last is relevant. Therefore, lack of permanency of an impairment, while *not* dispositive of the issue, may be considered.

own doctor stated that she will lead a normal life, albeit with "a *measure*" of pain. Deposition of John Chidester at 15 (emphasis added). The pain is not significant enough to require anything other than ibuprofen. She never was hospitalized. She ceased medical intervention after eight months, had two medical visits in the last four of those eight months, and told her doctor at her final visit that she was doing well. Thus, the evidence supports the trial court's determination that she has suffered minor, rather than serious, interference with her daily life.

Judgment affirmed.