## McGratton v. Burke

C.P. of Philadelphia County, no. 885.

*Joanne Fishman,* for plaintiff.
*Reno J. Siccota,* for defendant.

LORD, *J.,* May 18, 1995—

## I. PROCEDURAL HISTORY

In this action plaintiff John McGratton sought to recover damages for injuries he sustained on October 10, 1991, when a vehicle in which he was a passenger was struck in the rear by a motor vehicle operated by defendant Melvina Burke. Defendants conceded that they were negligent and plaintiff conceded that he was bound by the "limited tort option" of the Pennsylvania Motor Vehicle Financial Responsibility Law.[1,2]

On October 19, 1993, this matter was heard by a common pleas court board of arbitrators. The arbitrators, by a vote of 2 to 1, determined that plaintiff did not sustain a "serious injury" for purposes of the MVFRL and accordingly did not award damages for plaintiff's noneconomic loss. On November 2, 1993, plaintiff filed a timely appeal from the decision of the board of arbitrators.

On November 22, 1993, defendants' counsel wrote to plaintiff's counsel to schedule a defense medical examination for December 7, 1993. Plaintiff did not attend. On December 27, 1993, defendants' counsel wrote to plaintiff's counsel to reschedule the defense medical, and on the following day plaintiff's counsel advised that plaintiff would not attend the medical examination. On January 31, 1994, defendants presented a motion to compel the medical examination which was denied by the Honorable Eugene E.J. Maier.

On May 4, 1994, this case was tried before this court sitting without a jury. At the conclusion of the trial, this court found that plaintiff had suffered a "serious injury" for purposes of the MVFRL and awarded non-

1. 75 Pa.C.S. §1701 et seq.
2. Notes of testimony of trial of May 4, 1994, 6, 11.

economic damages to plaintiff in the amount of $75,000. On January 4, 1995, this court denied defendants' post-trial motions and entered judgment in the amount of $75,167.36.[3]

Defendants have now appealed, contending in their statement of matters complained of on appeal that: (i) Judge Maier erred in denying their request to conduct a defense medical examination after the hearing before the board of arbitrators; (ii) this court erred in finding that plaintiff had suffered a "serious injury" for purposes of the MVFRL; and (iii) that this court erred in declining to grant a remittitur of its damage award. For the reasons set forth hereinafter, this court believes that defendants' arguments on appeal are totally without merit.

## II. DEFENDANTS' POST-ARBITRATION REQUEST FOR A MEDICAL EXAMINATION

Defendants assert that Judge Maier erred in failing to order plaintiff to appear for a defense medical examination after the arbitration hearing.

Pa.R.C.P. no. 4010(a) provides:

"When the . . . physical condition . . . of a party . . . is in controversy, the court in which the action is pending *may* order the party to submit to a physical or mental examination by a physician. . . . The order *may be made only on motion for good cause shown. . . .*" (emphasis supplied)

It is not disputed that the decision whether to order a party to submit to a medical examination is left to the discretion of the trial court. *Uhl v. C.H. Shoemaker & Son Inc.,* 432 Pa. Super. 230, 234, 637 A.2d 1358, 1360 (1994); *John M. v. Paula T.,* 524 Pa. 306, 312,

---

3. $167.36 in delay damages was added to this court's award.

571 A.2d 1380, 1383 (1990). (Brief in support of defendants' motion for post-trial relief, p. 7.) Defendants nevertheless contend that Judge Maier abused his discretion.

It should be noted that defendants had a period of over six months between the filing of the complaint and the arbitration hearing to request a defense medical examination, but failed to do so. It should also be noted that defendants do not assert that there was any significant change in plaintiff's medical condition after the arbitration hearing. Moreover, defendants do not, and cannot, argue that they were surprised by Judge Maier's ruling. In January 1994 it was well known by the Philadelphia trial bar that requests for medical examinations made after an arbitration hearing would generally be denied unless there was a significant change in the plaintiff's medical condition or other particular good cause was shown.

Defendants contend that as a matter of law they were entitled to a post-arbitration medical examination of plaintiff because they made a "tactical decision to forego the scheduling of an independent medical examination with the expectation that the dispute could be resolved through arbitration expeditiously and cost-effectively." (Brief in support of defendants' motion for post-trial relief, p. 8.) This rationale falls far short of constituting the "good cause" which Pa.R.C.P. no. 4010(a) requires before a medical examination may be ordered.

The goal of the compulsory arbitration program is to resolve cases at the arbitration level, thereby reducing the number of cases that have to be processed and tried in our overburdened common pleas court. If parties such as the defendants in this case postpone important evidence-gathering devices such as medical examinations until after the arbitration hearing, the significance

of the arbitration process is diminished and there will necessarily be more appeals to the common pleas court because there will be less confidence in the validity of the results of the arbitration hearing.

Despite the fact that Judge Maier's general policy of denying post-arbitration requests for physical examinations (absent a significant change in the plaintiff's medical condition or other specific good cause shown) is clearly directed at making the arbitration process more effective, defendants arrogantly assume that they, rather than the court, should dictate how the arbitration process should be conducted. Defendants' position, in essence, is that litigants have the sole and unrestricted right to determine what discovery will be postponed until after the conclusion of arbitration hearings, and that the court cannot interfere with their decisions even if such decisions undermine the arbitration process. Such a position is clearly indefensible.

## III. "SERIOUS INJURY"

Defendants also assert that this court erred in finding that plaintiff had suffered a "serious injury" for purposes of MVFRL.

### A. *Findings of Fact*

Based upon those portions of the testimony and other evidence presented at trial which this court found to be credible, this court hereby makes the following findings of fact:

(1) Prior to the October 10, 1991 accident, which is the subject of this case, plaintiff John McGratton Jr., who was then approximately 21 years of age (N.T. 30), had a physically active lifestyle. Prior to the subject accident, plaintiff played basketball, worked out with

weights three or four times per week, played roller hockey and took his dog on four to five mile walks. (N.T. 29, 32, 53-55.) Prior to the subject accident, plaintiff had studied auto mechanics for four or five years and repaired cars to make extra money. (N.T. 33.)

(2) As a result of the October 10, 1991 accident, plaintiff injured his back and consequently with any significant physical activity plaintiff experiences sharp pain which starts in his lower back and radiates down the back of his left leg to his knee area. (N.T. 23-25, 28-29.) Although plaintiff had been involved in two automobile accidents prior to the October 10, 1991 accident, plaintiff never had pain radiating down his left leg prior to the October 10, 1991 accident.[4]

(3) Plaintiff's treating physician confirmed that prior to the October 1991 accident, plaintiff had not experienced radicular pain. He testified: "[T]he areas involved are to some degree similar areas, but . . . the patient also reported the radicular component of his symptoms which was not present in either the 1988 accident or the [June] 1991 accident and that this was separate and distinct." (Singer deposition 47.)[5]

(4) Radiologist Michael Brooks performed an MRI of plaintiff's spine and concluded that there was some disk space narrowing at the L-5—S-1 level. (Singer

---

4. This court rejected defendants' efforts to link the pain which radiated down plaintiff's left leg to plaintiff's prior automobile accidents. Plaintiff had recovered from a July 9, 1988 accident by January 1990. (N.T. 38.) Plaintiff was involved in a second automobile accident in a parking lot on June 18, 1991, but this accident resulted only in minor pain in plaintiff's lower back and an injury to his right knee. (N.T. 40-41.)

5. "Singer deposition" refers to the deposition of Maurice Singer, D.O., which was introduced in evidence at the trial before this court. (N.T. 56.)

deposition 20, 51.) Moreover, plaintiff's injury was also confirmed by electrodiagnostic studies performed at the University of Pennsylvania Medical Center which demonstrated an impingement on a nerve in plaintiff's back causing nerve inflammation which was linked to plaintiff's symptoms. (Singer deposition 20-22.)[6, 7]

(5) Immediately after the accident of October 10, 1991, plaintiff went to the emergency room of Frankford-Torresdale Hospital for treatment. (N.T. 16-17.) After spending several days in bed at home taking muscle relaxants, plaintiff went to Dr. Maurice Singer for treatment. (N.T. 19.) From October 1991 until February 1993, plaintiff received treatment from Dr. Singer approximately once a month (N.T. 20-22) consisting of ultrasound, heat treatment, massages and use of a TENS unit. (N.T. 20.) During this period of time plaintiff used a whirlpool and heat packs at home and received massages from his mother. (N.T. 20-21.) Plaintiff also consulted with a specialist in physical rehabilitation who prescribed various stretching exercises for plaintiff to perform on his own. (N.T. 26.)

(6) As a result of the radiating pain from his lower back down his left leg which is triggered by physical activity, from the time of the accident on October 10, 1991, through the trial on May 4, 1994, a period of over two and one-half years: plaintiff could no longer play basketball, but had to sit on the sidelines and watch as his friends played (N.T. 29); plaintiff could

6. This court found the medical report of Dr. Murray K. Dalinka (Exhibit D-1) introduced by plaintiff to be far outweighed by the medical testimony offered by plaintiff and plaintiff's testimony.

7. In its recent decision in *Murray v. McCann,* 658 A.2d 404 (Pa. Super. 1995), the Pennsylvania Supreme Court held that the MVFRL does not limit recovery of noneconomic damages to a plaintiff whose injuries can be seen or felt by a clinical test.

not run at all (N.T. 25, 32, 35); plaintiff could not walk more than two or three blocks without pain (N.T. 30, 33, 35); plaintiff could not lift more than 10 pounds (N.T. 32, 35); and plaintiff was unable to do the bending over which is necessary to work on automobiles. (N.T. 33.)

## B. *Legal Analysis*

The MVFRL provides that "[u]nless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for noneconomic loss . . . ." 75 Pa.C.S. §1705(d). "Serious injury" is defined by statute as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. §1702.

In its recent decision in *Murray v. McCann,* 658 A.2d 404 (Pa. Super. 1995), the Pennsylvania Superior Court, quoting from the Michigan Supreme Court's decision *DiFranco v. Pickard,* 427 Mich. 32, 69-70, 398 N.W.2d 896, 915 (1986), held that in deciding whether a bodily impairment is "serious" for purposes of the MVFRL, the factors which should be considered are: "the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, (and) the treatment required to correct the impairment." *Id.* 658 A.2d at 407.

In the instant case there is no question that plaintiff suffered severe impairment of several important body functions as a result of the accident. At the time of trial, plaintiff's ability to run had been impaired such that while he formerly had frequently played basketball, he could no longer run. Plaintiff's ability to walk had also been impaired such that while he formerly took his dog for four or five mile walks, as a result of the

accident he could walk no more than two or three blocks without pain radiating down his leg. Plaintiff's ability to lift was impaired such that while he formerly worked, out with weights three or four times a week, as a result of the accident he could not lift more than 10 pounds without pain. Plaintiff's ability to bend was impaired such that he could no longer do repair work on automobiles. In view of plaintiff's physically active lifestyle prior to the subject accident, running, walking, lifting and bending were important body functions central to plaintiff's enjoyment of his life as a young man. The extent of the impairment to plaintiff's bodily functions was severe. Plaintiff's ability to run was eliminated and plaintiff's abilities to walk, lift and bend were drastically reduced. Although this court found that there was insufficient testimony for this court to conclude plaintiff's injuries were permanent (N.T. 69; Singer deposition 26-27),[8] the impairment to plaintiff's ability to run, walk, lift and bend had continued for two and one-half years by the time of trial with very little improvement. In sum, this court concluded that the impairment of body functions which plaintiff suffered were "serious" within the meaning of the MVFRL because of the importance of the body functions impaired, the extent of the impairment and the duration of the impairment.

---

8. It is clear that an injury need not be permanent in order to constitute a "serious injury" for purposes of the MVFRL. 75 Pa.C.S. §1702, in defining "serious injury," requires that a "serious disfigurement" be "permanent" to constitute a "serious injury," but imposes no permanency requirement for a "serious impairment of bodily function" to constitute a serious injury. *Murray v. McCann, supra,* 658 A.2d at 408 n.3.

## IV. REMITTITUR

Defendants' final contention in their statement of matters complained of on appeal is that this court erred "in refusing to grant modification and/or remittitur of the verdict as the verdict did not reflect the nature and extent of the plaintiff's injuries and treatment course." Although this contention is somewhat vague, it appears that defendants are arguing that this court erred in not reducing its damage award.

Under Pennsylvania law, remittitur is a procedure for a court to reduce a jury award. See *e.g., Haines v. Raven Arms,* 536 Pa. 452, 455, 640 A.2d 367, 369 (1994), *supplemented by* 539 Pa. 401, 652 A.2d 1280 (1995); *Carminati v. Philadelphia Transportation Co.,* 405 Pa. 500, 509, 176 A.2d 440, 445 (1962). Counsel for defendants have not identified any decisions where a Pennsylvania court has employed the remittitur procedure to reduce a damage award made by a judge sitting without a jury.[9] This court believes that the remittitur procedure was designed specifically to allow judges to control excessive jury awards, and has no applicability to decisions by judges sitting without juries.

However, even assuming that a judge hearing motions for post-trial relief may remit damages awarded by a judge sitting without a jury, this court specifically finds that the damages awarded in this case do not shock this court's sense of justice. Moreover, there is nothing in the record of this case to suggest that this court as fact-finder was influenced by partiality, prejudice, mistake or corruption. *Carminati, supra* at 509, 176 A.2d at 445. The sum of $75,000 hardly seems an excessive amount to award a young man who has been

---

9. But see *Barrack v. Kolea,* 438 Pa. Super. 11, 25, 651 A.2d 149, 156 (1994).

deprived by defendants' negligence of some of the most valued pleasures of youth for a period of at least two and one-half years.

### V. CONCLUSION

For the foregoing reasons, this court believes that defendants' appeal is totally without merit.