## Whitmore v. Sweitzer

C.P. of York County, no. 93-SU-03081-01.

*Thomas P. Lang,* for plaintiff.
*Melinda Fisher Nowak,* for defendant.
*Robert J. Stewart,* for additional defendant.

CASSIMATIS, *J.,* March 7, 1996—The defendant, Brenda F. Sweitzer has filed a motion for summary judgment against the plaintiff, Edward F. Whitmore because the plaintiff who has elected the limited tort options set forth in 75 Pa.C.S. §1705 has not sustained a serious injury. The motion will be granted.

On December 11, 1991, Whitmore was a passenger in a vehicle driven by his wife, Andrea Whitmore, who has been joined as an additional defendant. As they entered the intersection of Eastern Boulevard and Edgewood Road in Springettsbury Township, York County, Pennsylvania, their car collided with a vehicle operated by Sweitzer. This action was commenced by a complaint filed July 16, 1993 in which Whitmore alleges Sweitzer was negligent, careless and reckless in causing the collision. Plaintiff further alleges:

"(10) As a result of the negligence, carelessness and recklessness of the defendant, plaintiff suffered serious and permanent injuries including, but not limited to, cervical sprain, lumbar sprain, contusions to his left shoulder, and severe damage to his nerves and nervous system."

Through discovery it has been established that Whitmore has elected the "limited tort" option on his policy of automobile insurance in effect on the date of the accident. Now that discovery is complete, defendant in her motion for summary judgment argues plaintiff cannot overcome the threshold requirement of showing a "serious impairment of body function" as required by the Motor Vehicle Financial Responsibility Law and Whitmore's own choice of the "limited tort" option.

There is no longer any doubt that the court may consider the issue of "serious injury" in the context of a motion for summary judgment.

In *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), the en banc Superior Court addressed the role of the trial court and jury in limited tort cases. The Superior Court held that a plaintiff must present objective evidence of a serious injury, in order to proceed to trial. The court stated:

"[U]pon the filing of a motion for summary judgment, where there is no substantial dispute of material fact that the plaintiff has not met the 'serious impairment of body function' threshold, or that the plaintiff has indeed met the threshold, the court should make the determination as a matter of law. If, upon review of the undisputed record, the threshold has not been met, the case should be dismissed. If, on the other hand, the evidence conclusively establishes that the plaintiff has suffered 'serious impairment of body function,' then the jury may decide only the issues of liability and damages. We limit the jury's role to a finding of liability and damages in such a case because to do otherwise would put the plaintiff to the double burden of showing 'serious impairment of body function' twice, once to the judge and again to the jury. Finally, if there is a substantial dispute of fact on the threshold issue, the question is one for the jury. We further hold that a plaintiff may not create a triable issue of fact with subjective evidence only. We agree with both New York and New Jersey's determinations that a plaintiff, to cross over the 'serious injury' threshold must show a material dispute of fact by objective medical evidence. *Oswin,* [129 N.J. 290] *supra* at 314, 609 A.2d at 427-429 [1992]; *Licari,* [57 N.Y.2d 230], *supra* at 239, 455 N.Y.S.2d at 574-75, 441 N.E.2d at 1092 [1982]. Although we recognize that soft tissue injuries may be accompanied by subjective complaints of pain that are so severe that they result in a 'serious impairment of body func-

tion,' *Murray v. McCann,* [442 Pa. Super. 30], *supra* at [30], 658 A.2d at 404 [1995], the impairment must be objectively manifested. Oral testimony alone (unless it is an admission of a party opponent) is never sufficient to support a motion for summary judgment, as credibility is at issue. *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989); *Nanty Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932); *Garcia v. Savage,* 402 Pa. Super. 324, 586 A.2d 1375 (1991). We underscore that the inquiry does not focus on the injury itself but whether the injury caused serious impairment of body function." *Id.* at 497-98, 665 A.2d at 1232-33. (footnote omitted)

The court applied that standard to the case before it. The court defined the term of serious impairment of bodily injury. The court stated:

"It remains for us to determine whether appellant presented enough evidence to create a triable issue of material fact on the question of whether he suffered a 'serious injury' and thus may carry his case across the limited tort threshold. In this case, appellant claims that he sustained a serious impairment of body function. This term is not further defined by the relevant statutes. We have not found any Pennsylvania cases that conclusively define the term. We are persuaded, however, as was the trial court in this case, that the definition adopted by the Michigan courts in *DiFranco v. Pickard* is a useful one.

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular

body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious. 427 Mich. at 39, 398 N.W.2d at 901. See also, Pennsylvania Standard Civil Jury Instruction 6.02(D) (1991).

"An impairment involves more than the injury itself. The consequences of the injury must involve a serious impact for an extended period of time on a plaintiff's life. See *Oswin, supra* at 318, 609 A.2d at 429. It must interfere substantially with the plaintiff's normal activities and not impose only a mild or slight limitation. See *Licari, supra* at 236, 455 N.Y.S.2d at 573-74, 441 N.E.2d at 1091." *Id.* at 499, 665 A.2d at 1233-34. (footnote omitted)

Defendant argues plaintiff has not established causation or serious impairment of body function.

On the issue of causation, there is no testimony from the medical reports to indicate that the accident of December 11, 1991 caused the injuries complained of in Whitmore's complaint.[1]

---

1. The medical records before us include the emergency room report produced immediately after the accident in which the plaintiff complained of neck, left shoulder, and arm and lower back pains; x-rays for these areas were negative except for the lower back which revealed three pre-existing lumbar disc herniation problems which had been corrected by surgery.

Dr. Ysla in his December 23, 1991 letter diagnosed plaintiff as having a "cervical strain."

472

In his deposition Whitmore testified he was not an active person prior to the automobile accident in 1991. He had been fully disabled since a work-related accident in 1990. That accident required surgery to repair a herniated lumbar disc. This was apparently a recurrence of a 1987 work-related accident that also required surgery. It was the work-related accident in 1990 that kept Whitmore from working. His workmen's compensation claim was commuted in April 1994, indicating full disability until that time and some partial disability accounting for his $20,000 commutation settlement. He testifies he is still limited by the 1990 work-related injury to sedentary or light work. He further indicated he is looking for work.

In January 1992, plaintiff was referred to White Rose Physical Therapy where he was again diagnosed as having cervical strain. He failed to follow through with recommended treatment and was discharged.

In March of 1992, plaintiff was referred to Rehab Hospital of York when he complained only of low back pain which had been caused by a work-related injury prior to the accident at issue. The initial report from the physical therapy department reveals no complaints about the plaintiff's neck or left shoulder and arm area.

In April of 1992, Dr. Kruper examined plaintiff with respect to the low back pains that pre-existed the accident. Dr. Kruper made no reference to any problems with the plaintiff's neck, left shoulder and arm complaints which were allegedly the results of the accident of December 11, 1991.

Again, an MRI in May of 1992 revealed the slight possible impingement in the left shoulder but, other medical records show no further treatments or complaints by plaintiff.

In April 1993, plaintiff was examined by Dr. Green who noted only that the plaintiff claimed "mild tenderness in the region of the cervical spine." The balance of his complaints were related to the lumbar spine.

Defendant argues that plaintiff was unable in his deposition to articulate any activity that is or was curtailed by his alleged injuries in the auto accident of 1991. When asked what he did with his time prior to the accident, plaintiff responded "I went to my therapy sessions. I watched the little one at home. My other ones were at school. I did a few things around the house, get dinner going and stuff like that, you know, where I didn't have to lift no heavy weights or nothing." When asked to name activities curtailed by the 1991 car accident, defendant suggested participation in volleyball. When pressed on this point, he admitted he was referring to activities prior to the 1990 injury, and he had only attempted to play volleyball one time after the 1990 back injury. He offered much the same testimony regarding softball, a sport he apparently rarely participated in at any time and never played after the 1990 back injury.

In addition to the low back injuries, defendant's activities are further limited by his lack of a driver's license. His driving privileges are suspended until the year 2012. This restriction has kept him from physical therapy, a work-hardening program, and from accepting an offer of employment in Dover, Pennsylvania in April of 1994.

The medical records and plaintiff's testimony reveal plaintiff's injury as a minor cervical strain and *possible* rotator cuff tear. Defendant argues these two injuries have not restricted plaintiff in performing normal daily functions. Rather, the restrictions on his work and sports activities, defendant argues, are related to a prior back injury and a suspended driver's license which cannot be considered as part of a supposed "serious injury" in this claim.

We have examined the various submitted physician reports. These include: Report of Dr. Roy G. Ysla, a diplomate of the American Board of Physical Medicine and Rehabilitation, the reports of Dr. John S. Kruper, an orthopaedic surgeon, of April 24, 1992, and April 27, 1993, and the report of Dr. Robert L. Green, an orthopaedic surgeon, under date of April 13, 1993. In none of these nor any other reports is there any statement concerning the cause of the results of the physical examination and diagnostic impression that established the cause of plaintiff's complaint as the accident of December 11, 1991.

Defendant's second argument is that plaintiff has not established that the accident resulted in a "serious impairment of body function." On this issue, plaintiff argues that his physical therapist, Donald R. Swartz, in his letter to orthopedist Wayne Herrick, M.D., dated January 31, 1992, stated the following:

"Please be advised your patient, Ed Whitmore, has started conservative physical therapy treatment in our office. I am told he was involved in an automobile accident on December 11, 1991. Initially, he had severe neck pain with radiation into the left upper extremity. There also was numbness and tingling into his left arm to the level of his elbow for about 8-10 days post-trauma. This latter symptom has improved significantly. He also had a lot of pain in his right upper arm, but this has also improved noticeably. His chief complaints at this time are of severe neck pain and tightness in the neck and left shoulder girdle region. He cannot lift anything heavy without increased neck and shoulder pain. He also has a significant limitation of range of motion in the cervical region.

"Clinical assessment today reveals cervical rotation of 0 through 50° to the right, cervical rotation to the

left of 0 through 30°. He is quite guarded with extension, and I measured this at 0 through 10°. Forward flexion approached normal limits. I cannot detect any sensory deficits, and reflexes are equilateral in the upper extremities. Manual muscle testing reveals mild comparative weakness in the left deltoid, biceps, and triceps. There is exquisite tenderness noted in the left upper trapezius and cervical paraspinal muscles. He also has palpable tightness in the left upper trapezius. He presents today wearing a soft cervical collar."

There is nothing in the record before us to indicate that the condition which Mr. Swartz described in his letter of January 3, 1992, has continued. We have only the other letters above referred to and none of them touch upon the limitation of range of motion in the cervical region.

Thus, the record before us is devoid of the "serious impairment of body function" threshold, *Dodson, supra,* and we determine as a matter of law there is no substantial dispute of material fact on this issue as well to submit to the jury.

Accordingly, we will enter an order dismissing plaintiff's claims for non-economic recovery and grant defendant's motion for summary judgment.

## ORDER

And now, to wit, March 7, 1996, in consideration of the foregoing opinion, the motion of the defendant, Brenda F. Sweitzer, for summary judgment in her favor and against the plaintiff, Edward F. Whitmore, on all claims made by him in this action is hereby granted, and the complaint is hereby dismissed.

The prothonotary shall provide notice of this opinion and order as required by law.