## Reidinger v. Linebaugh

*James B. Pannebaker,* for plaintiff.
*William E. Brenner Jr.,* for defendant.

GEORGELIS, *J.,* January 12, 1998—Before me is the defendant's motion for partial summary judgment, which seeks to have me rule, as a matter of law, that the plaintiff, Jill Reidinger, has not suffered "serious injury" as contemplated under the "limited tort" option of the Motor Vehicle Financial Responsibility Law, Act of February 12, 1984, P.L. 26, No. 11, 75 Pa.C.S. §1701 et seq. The motion will be granted.

This lawsuit arises out of an accident, which occurred on August 19, 1996, while the plaintiff was bicycling. She was thrown from her bicycle when the defendant's

vehicle struck the front of her bicycle. As a result of the accident, she sustained two fractured ribs, a collapsed lung, a soft tissue injury to her right shoulder and a small laceration to her right ankle.

At the time of the accident, the plaintiff was insured under the limited tort option provided for by 75 Pa.C.S. §1705. That option provides that, in exchange for a lower premium rate, an insured may waive her right to bring suit for noneconomic loss incurred as a result of an accident. However, an insured under the limited tort option may maintain an action for noneconomic loss if she can prove that she has suffered a "serious injury." 75 Pa.C.S. §1705(d). "Serious injury" is defined as a "personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. §1702. The issue before me is whether the plaintiff's injuries rise to the level of serious impairment of body function or permanent serious disfigurement.

In *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), *alloc. granted,* 544 Pa. 608, 674 A.2d 1072 (1996), our Superior Court held that it is the function of the judge to make the initial determination whether a plaintiff has suffered a serious injury where there is no dispute of fact.

"In the context of summary judgment the court must determine initially (1) whether the plaintiff as moving party has established that he or she has suffered serious impairment of a body function; (2) whether the defense as moving party has established that plaintiff has not suffered serious impairment of a body function; or (3) whether there remains a genuine issue of material fact for the jury to decide. . . . We emphasize that in deciding whether a material issue of fact exists for the jury, the judge should not focus on the injury but should

focus on the nature and extent of plaintiff's impairment as a consequence of the injury." *Id.* at 494, 665 A.2d at 1231. (citation omitted)

The court set forth the following analysis to determine whether a serious impairment of body function exists:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors." *Id.* at 499, 665 A.2d at 1233-34 (quoting *DiFranco v. Pickard,* 427 Mich. 32, 39, 398 N.W.2d 896, 901 (1986)); see also, *Murray v. McCann,* 442 Pa. Super. 30, 36, 658 A.2d 404, 407 (1995).

The court emphasized that: "[a]n impairment involves more than the injury itself. The consequences of the injury must involve a serious impact for an extended period of time on a plaintiff's life. . . . It must interfere substantially with the plaintiff's normal activities and not impose only a mild or slight limitation." 445 Pa. Super. 479, 499, 665 A.2d 1223, 1234 (1995) (citations omitted); see also, *Leonelli v. McMullen,* 700 A.2d 525, 528 (Pa. Super. 1997) ("[P]laintiff must establish that, for an extended period of time, the injuries substantially interfered with his or her normal activities."). In deciding whether the impairment was serious, the Superior Court looked to other interpretations of the term. It noted that the Pennsylvania Air Pollution Control Act

defines "serious bodily injury" as one "which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ or mental faculty." *Dodson v. Elvey,* 445 Pa. Super. 479, 500, 665 A.2d 1223, 1234 (1995), quoting 35 Pa.C.S. §4009(d).

The plaintiff in *Dodson* sustained injuries in a motor vehicle accident and sought to recover noneconomic damages. When the defendant raised the limited tort election as a defense, Dodson contended that he had sustained a serious injury. His evidence showed that he immediately felt pain in his low back, in the back of his head and in his right arm and shoulder and that he developed a frontal headache secondary to mid-forehead contusion immediately after the collision. He was taken to the emergency room, where x-rays were taken, and he was given a sling for his right arm. He could not use his arm throughout the month following the accident. He did not return to his job as a warehouseman for about four months and wore the sling the entire time that he was out of work. He was under the treatment of an orthopedist who initiated hydrotherapy and diagnosed rotator cuff damage and a fractured elbow. He also saw a second doctor for eight visits and followed a physical therapy program. His doctor reported that he would "suffer long term with some mild to moderate right upper extremity weakness and more likely than not would develop arthritis in the future." *Id.* at 489, 665 A.2d at 1228. It was also predicted that his soft tissue injury might be symptomatic periodically for the next two to three years.

At his deposition, Dodson stated that he continued to feel constant drumming pain primarily in his shoulder but sometimes in his elbow as well. He related that

he was able to do the same work as before the accident, but that it was harder to do with increased pain. He reported that he was unable to bowl, play softball or lift weights as he did before the accident. Upon review of the evidence, the Superior Court concluded that the record showed no serious interference with the plaintiff's daily life and that summary judgment had properly been entered in favor of the defense.

In the instant case, the plaintiff sustained two fractured ribs, a collapsed lung, an injury to her right shoulder and a small laceration on her right ankle. She was taken to the emergency room and released from the hospital the following day. As part of a regularly scheduled follow-up, she returned to the hospital two days later. At that time, a chest tube was inserted to treat her pneumothorax. Following her release, she was instructed to be active and not to just lie in bed. The plaintiff was prescribed medicine for one week following her accident, and she took Advil for an additional month. However, she has not taken pain medicine since that time.

The plaintiff testified that she can do everything she could do before the accident. She exercises on a mountain and a road bike and with a rowing machine, and she plays tennis. She experiences periodic shortness of breath, particularly when she exercises on her bicycle, and occasional achiness in her rib area. She returned to her employment on October 7, 1997, less than two months after her accident. She performs all aspects of her physically demanding job as a fuel delivery truck driver, including pulling a 140-210 pound fuel hose and installing and servicing furnaces and boilers. No special accommodations have been made, and the plaintiff performs all of her regular job functions.

The plaintiff's last visit to Dr. Stoner, her treating chiropractor, was on December 4, 1996, and she made no complaints of right shoulder or right upper back

pain. Dr. Stoner noted, in a December 10, 1996 report to the plaintiff's counsel, that she had returned to her regular exercise routine and was back to work without any difficulty. Although plaintiff did notice occasional discomfort in her right back and shoulder while hauling the oil truck hose, the report noted that she was able to get through this without any difficulty. The plaintiff has no future appointments to see any doctors and has not taken any type of pain medicine, including over-the-counter pain medicine, since the month immediately following her accident.

I do not believe that the evidence of the plaintiff's injuries supports a finding that, as a consequence of them, she suffered a serious impact on her life for an extended period of time, as *Dodson* emphasized is required. Although her injuries required hospitalization and time off from work, she returned to work within two months and is able to perform all her pre-accident activities. Her complaints of periodic shortness of breath, when she exercises on her bicycle, and occasional achiness in her rib area, constitute only a mild or slight limitation, which *Dodson* held is inadequate, and they do not rise to the level of substantial interference with her normal activities, which *Dodson* requires.

The Superior Court held that the following evidence of Mr. Dodson's injuries did not establish a serious impairment of a bodily function: his four month loss of work; his complaints of constant pain in his shoulder and occasional pain in his elbow; his inability to perform his work as easily as before and the increased pain he experienced in performing it; his inability to participate in the sports he enjoyed before the accident; his doctor's prognosis that he would suffer some long-term upper extremity weakness; that his soft tissue injury would be symptomatic for two to three years and that he likely would develop arthritis. The plaintiff's im-

pairment is even less than Mr. Dodson's. She lost less than two months of work, is without pain, except for occasional rib achiness, performs her physically demanding job without difficulty, exercises as she did before with only periodic shortness of breath and has no prognosis of future medical problems.

In *Murray v. McCann*, 442 Pa. Super. 30, 658 A.2d 404 (1995), our Superior Court stated that "[w]e will not question that appellant experiences pain. The issue is whether there has been a serious impairment in her functioning as a result of the pain. Appellant stated that she is stiff and sore and that she experiences pain when she lifts heavy loads, but her testimony also establishes that she still performs all her daily activities fully. She does not have to take breaks from work for the pain. . . . and told her doctor at her final visit that she was doing well. Thus, the evidence supports the trial court's determination that she has suffered minor, rather than serious, interference with her daily life." *Id.* at 39-40, 658 A.2d at 408-409. I believe the plaintiff's impairment is even less than Ms. Murray's.

Guided by the Superior Court's analyses of Mr. Dodson's and Ms. Murray's injuries and its holdings that those injuries did not constitute a sufficient impairment to override the limited tort option and having compared those injuries to the plaintiff's, I conclude that her injuries constitute even less of an impairment than Mr. Dodson's and Ms. Murray's. Accordingly, I hold that she has not suffered a serious injury, as required by 75 Pa.C.S. §1705(d).

The plaintiff also suffered some scarring, but I do not believe it constitutes permanent serious disfigurement sufficient to entitle her to maintain a cause of action for noneconomic damages.[1] As a result of the

---

1. The plaintiffs do not specifically allege that Jill Reidinger's scarring would permit her to recover noneconomic damages under

accident, the plaintiff sustained a "4 cm superficial laceration to the right inner leg." Emergency Department Note, Hershey Medical Center, 08/19/96. This laceration did not require stitches. Additionally, a right tube thoracostomy was performed in order to re-inflate the plaintiff's right lung. This procedure required an incision approximately four inches below her right armpit. This scar is only visible if a bathing suit or low-cut tank top is being worn. The only people who have commented about either scar are family members or friends of the plaintiff. The plaintiff has not changed what she wears in order to hide either scar. I do not believe that her scarring is the type for which the legislature intended to allow recovery when it defined serious injury to include permanent serious disfigurement. I conclude that her two scars do not constitute permanent serious disfigurement.

In the alternative, the plaintiffs argue that they have presented enough objective evidence to establish a substantial dispute of fact on the threshold issue of whether the plaintiff has suffered a serious injury. Therefore, they assert that the issue must be submitted to a jury. Although the parties dispute the conclusion to be drawn from the facts, namely whether the plaintiff has or has not suffered a serious injury, I find no dispute of material fact that would prohibit the granting of a motion for summary judgment. Both sides rely on the same emergency records, depositions and physician reports, and the plaintiff's injuries and current medical condition are not disputed. I conclude that there is no genuine issue of material fact with respect to the nature and

---

the "permanent serious disfigurement" portion of the "serious injury" definition. Rather, the plaintiffs argue that her injuries, together with the permanent scarring, entitle them to recover because she suffered serious impairment of body functions. See plaintiffs' brief in response, section II: Statement of questions involved.

extent of the plaintiff's injuries which prevents me from holding, as a matter of law, that the plaintiff has not suffered a serious injury. I hold that she may not recover noneconomic losses, and, accordingly, I enter the following:

## ORDER

And now, January 12, 1998, for the reasons stated in the foregoing opinion, the defendant's motion for partial summary judgment is granted. The plaintiffs are precluded from recovering noneconomic damages in this case.