665 A.2d 1223

Michael Timothy DODSON, Appellant,

v.

**Frederick William ELVEY.**

Superior Court of Pennsylvania.

Argued April 28, 1995.

Filed Sept. 28, 1995.

480

482

Gregory A. Olson, Indiana, for appellant.

Ralph M. Monico, Hollidaysburg, for Frederick W. Elvey.

James R. Ronca, John F. Duggan, Harrisburg, Leonard A. Sloane, Media, Amicus Curiae, for PA Trial Lawyers.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, OLSZEWSKI, BECK, KELLY, POPOVICH, HUDOCK, and SAYLOR, JJ.

BECK, Judge:

This appeal addresses whether under the "limited tort option" of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1701 *et seq.* (Purdon Supp.

1995), it is the function of the judge or the jury to make the initial determination whether a plaintiff has suffered "serious injury". We conclude that, in cases like this one, it is the function of the judge.

█ The limited tort option authorizes the insurer to offer automobile insurance coverage at reduced premium rates to insureds who give up the right to sue for noneconomic damages, such as pain and suffering. A limited tort elector may sue for noneconomic damages only if he or she suffers "serious injury" in an automobile accident. 75 Pa.C.S. § 1705(d).

Serious injury is statutorily defined as death, serious impairment of body function or permanent serious disfigurement. 75 Pa.C.S. § 1702. Since appellant claims he suffered "serious impairment of body function", this opinion responds mainly to the statutory standard involving that category of "serious injury," although the procedure outlined *infra* is certainly applicable to the statutory standard involving "permanent serious disfigurement." [1]

In the instant case the court granted summary judgment in favor of defendant-appellee Frederick William Elvey on the basis that the plaintiff-appellant Michael Timothy Dodson, who had elected the limited tort option, had not met his burden of establishing a "serious injury," i.e., serious impairment of body function. The court dismissed the action for noneconomic damages. Appellant filed this appeal, arguing that the determination of the serious impairment of body function should be a fact question for the jury, and that his injuries did indeed meet the limited tort option threshold. We affirm the trial court's grant of summary judgment in favor of appellee.

█ We begin by noting our scope of review in this appeal from summary judgment. Our review is plenary, and we therefore must determine whether the uncontroverted allegations of the pleadings and the other permissible materials filed in support of and in opposition to the motion reveal

1. Obviously, there will be little litigation regarding the occurrence of "death".

that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. *Briggs v. Erie Ins. Grp.*, 406 Pa.Super. 560, 594 A.2d 761 (1991); *Krause v. Great Lakes Holdings, Inc.*, 387 Pa.Super. 56, 563 A.2d 1182 (1989), *alloc. den.*, 524 Pa. 629, 574 A.2d 70 (1990). *See* Pa.R.Civ.P. 1035(b) (the judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law). The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a material fact must be resolved against the moving party. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991); *Carns v. Yingling*, 406 Pa.Super. 279, 594 A.2d 337 (1991).

With this standard in mind, we outline the statutory context and factual background of this particular case. Since 1990, the MVFRL requires automobile insurers to offer insurance coverage to its customers in accordance with the following "Notice to Named Insureds":

A. "Limited Tort" Option—The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies. The annual premium for basic coverage as required by law under this "limited tort" option is $_____. Additional coverages under this option are available at additional cost.

B. "Full Tort" Option—The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right

for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers. The annual premium for basic coverage as required by law under this "full tort" option is $_____. Additional coverages under this option are available at additional cost....

75 Pa.C.S. § 1705(a)(1).

■ In exchange for a reduced premium, appellant elected the limited tort option when purchasing automobile insurance.[2] Appellant therefore is bound by the following statutory provision:

(d) Limited tort alternative.—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. *Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss, ....*[3]

2. It is important to note that the limited tort option requires an affirmative selection by the insured. Where no election is made, the full tort option is deemed to apply. 75 Pa.C.S. § 1705(a)(3).

3. This provision, 75 Pa.C.S. § 1705(d), also provides certain exceptions to the act's limitation on tort recovery, none of which are applicable in this case:

(1) An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:
(i) is convicted or accepts Accelerated Rehabilitative Disposition (ARD) for driving under the influence of alcohol or a controlled substance in that accident;
(ii) is operating a motor vehicle registered in another state;
(iii) intends to injure himself or another person ...; or

75 Pa.C.S. § 1705(d) (emphasis added). The act defines "serious injury" as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. § 1702.

Appellant sustained certain injuries when he was involved in a motor vehicle accident with appellee. Appellant filed the instant action for damages, including noneconomic damages, against appellee.[4] In his amended complaint, appellant claimed that he had suffered "personal injury resulting in a serious impairment of body function." The complaint further described appellant's injuries as "serious and permanent," including but not limited to "cervical strain; lumbar strain; iliopsoas strain; impingement syndrome, right shoulder; contusion, right elbow, right shoulder." Appellee, in his new matter and later motion for summary judgment, asserted that appellant had chosen the limited tort option in his insurance coverage, and therefore could not recover noneconomic damages because his injuries did not meet the "serious injury" threshold set forth by law.

In his response to the appellee's motion for summary judgment, appellant filed an affidavit with two supporting medical reports, and his own deposition testimony. After reviewing the evidence, the trial court held that it raised no triable issue of fact as to whether appellant sustained serious impairment of body function.

(iv) has not maintained financial responsibility as required by this chapter, . . . .
(2) An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.
(3) An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle. . . .

4. Apparently, all claims asserted by appellant for economic damages—medical bills and lost wages—have been satisfied and are not at issue here.

Appellant's accident occurred on January 11, 1992. He immediately felt pain in his low back, the back of his head, his right arm and shoulder, and developed a frontal headache secondary to a mid-forehead contusion. He was transported to the emergency room where x-rays were taken and he was given a sling for his right arm. Appellant testified that he could not use his arm throughout January 1992. Appellant did not return to his job as a warehouseman for about four months, and testified that he wore the sling "maybe the entire time [he] was off."

Appellant treated with an orthopedist, Dr. Fulchiero, who initiated hydrotherapy and diagnosed rotator cuff damage (right shoulder) and a fractured elbow.[5] Appellant had six office visits with Dr. Fulchiero between January 16 and May 22, 1992. Appellant's attorney referred him to a second physician, Dr. Smith, who diagnosed cervical sprain, lumbar strain, and iliopsoas strain. Appellant treated with Dr. Smith for eight visits between January 24 and August 28, 1992. At a January 24, 1992 visit, appellant had decreased range of motion secondary to muscle tightness, and limited right elbow and right shoulder range of motion. He had pain on palpation in his low back. Dr. Smith ordered moist heat and ultrasound for his back and exercises for his shoulder. On February 14, 1992, appellant's right scapula was injected with DepoMedrol and Lidocaine. A physical therapy program was instituted, involving nine treatments from April 9 until April 30, 1992.

Appellant was released to work, full duties without restriction, on May 21, 1992, with a full range of motion. His return to work resulted in "brief muscle soreness but this quickly resolved." When appellant returned to work, he had the same position with the same duties as before the accident. By July 1992, appellant complained of some elbow and forearm weakness. Examination showed some decreased strength, and he

5. Appellee's evidence indicates that the non-displaced radial neck (elbow) fracture did not appear on initial x-rays. In addition, by his January 16, 1992 office visit, appellant was described as having a "fairly functional range of motion," although restricted in the extremes.

was instructed to continue with home exercises. At his August 7, 1992 visit, appellant's examination revealed full range of motion with some stiffness at the extremes of internal and external rotation. A self-protective reflex was revealed. Dr. Smith noted a slight decrease in right upper extremity strength, but there were no neurovascular deficits.

In addition, an August 12, 1992 MRI indicated "a slight increase in signal intensity in the humeral head consistent with marrow edema which is typically seen after trauma." Dr. Smith opined that this was related to a bone bruise, which would heal, and would be "of no functional consequence," although there might be a defect shown on x-ray for the indefinite future. On August 28, 1992, his range of motion had slight limitations at the extremes but was otherwise normal.

Dr. Smith opined that appellant would "suffer long term with some mild to moderate right upper extremity weakness," and more likely than not would develop arthritis in the future. Finally, his soft tissue injury "may be symptomatic periodically for the next 2–3 years before resolving finally." In his July 23, 1993 deposition testimony, appellant stated that he continued to feel "constant drumming pain" mostly in his shoulder, but sometimes in his elbow as well. He testified that he does the same work as before the accident, but that it is harder to do, with increased pain. He uses no treatment or prescription medication for the pain, other than occasional self-treatment with Tylenol. Appellant testified that he cannot bowl, play softball or lift weights as he did before the accident, so he no longer engages in these recreational activities. Appellant now carries his son in his left arm.

Upon review of the evidence, the trial judge opined that, "[a]t best, this is a case of a soft tissue injury with residual pain. We do not find an impairment of function. Plaintiff has full range of motion. Subjective complaints of pain are insufficient to constitute an impairment of body function." The court granted summary judgment in favor of the appellee.

Appellant and amicus [6] argue that the determination of whether a plaintiff's injury reaches the limited tort threshold, *i.e.*, whether it constitutes a "serious impairment of body function," should be a question for the jury. Appellant asserts that allowing the court to make this decision impairs plaintiffs' constitutional right to a jury trial. In addition, appellant claims that his injuries do in fact cross the limited tort threshold, and should suffice to sustain his claim for noneconomic damages.

Appellee and amicus [7] argue that the limited tort threshold provision is part of automobile insurance reform. Its purpose is to reduce litigation of pain and suffering claims in minor injury cases. By electing the limited tort option, a plaintiff such as appellant affirmatively waives the right to have a jury decide his case where the injuries are not serious. At the very least, appellee argues that the threshold issue of whether the plaintiff has suffered serious injury is for the court to decide. Appellee asserts that, in response to a motion for summary judgment, the court should decide whether the plaintiff has presented sufficient evidence to create a jury question as to whether his injuries are serious. Appellee further argues that the trial court properly decided there was no genuine issue of material fact in this case that appellant did not suffer a serious impairment of body function.

This court has not yet had the opportunity to address this precise issue. *Compare Murray v. McCann*, 442 Pa.Super. 30, 35 n. 1, 658 A.2d 404, 406 n. 1 (1995) (limited tort option case was not tried to jury and trial court decided all questions of law and fact; plaintiff did not argue below or on appeal that jury should have decided threshold issue); *Berger v. Rinaldi*, 438 Pa.Super. 78, 651 A.2d 553 (1994) (parties stipulated that plaintiff's injuries were not "serious"). We are guided in our decision by relevant Pennsylvania cases, as well as cases from

6. An amicus brief was filed on behalf of appellant by the Pennsylvania Trial Lawyers Association (PATLA).

7. An amicus brief was filed on behalf of appellee by the Pennsylvania Defense Institute (PDI).

other jurisdictions that have already grappled with the limited tort threshold issue.

We first address appellant's argument that the threshold issue should be one for the jury to decide. In support of this proposition, appellant refers to certain language which was introduced but rejected by our legislature during the drafting process: "The determination of whether an injury constitutes a serious injury shall be a question of law and not a question of fact." Scanlon Amendment, A–4129, Printer's No. 2829; Freind Amendment, 1990000394, 00394 DGS: AO 02/01/90, # 18. Appellant argues that the legislature's rejection of this language indicates the legislature's intent that the threshold determination be decided by a jury rather than the court.

We do not agree, however, that the legislature's rejection of proposed statutory language during debate, which inevitably includes political compromises, is conclusive evidence of its intent. Indeed, what is said during debate on the floor of the House or Senate should not be relied upon in formulating legislative intent. *Com. v. Alcoa Prop., Inc.*, 440 Pa. 42, 269 A.2d 748 (1970). Nor are we free to disregard the plain meaning of a statute in order to adopt its legislative history. *Gutman v. Worldwide Ins. Co.*, 428 Pa.Super. 309, 630 A.2d 1263 (1993). As a matter of fact, we note that the legislature also rejected other proposed language during debate, which if enacted, clearly would have established appellant's injuries as "serious." [8] We doubt that appellant would have us decide the threshold issue *against* a plaintiff based upon the rejection of plaintiff-favorable language.

8. The rejected threshold language defined a "serious injury" as:
 A personal injury which results in death; dismemberment; *a fracture;* loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body function or system; or a medically determined injury or impairment of non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
 DGS:EW 06/13/89 # 90, A1845, Printer's No. 1954 (emphasis added).

Appellant's next argument centers on the fact that, in Pennsylvania, litigants in personal injury actions have a constitutional right to a jury trial. *Ottavio v. Fibreboard Corp.*, 421 Pa.Super. 284, 617 A.2d 1296 (1992); Constitution of the Commonwealth of Pennsylvania, Art. 1, § 6. However, this right may be expressly or impliedly waived. *Ottavio, supra; Stock v. Arnott*, 415 Pa.Super. 113, 608 A.2d 552, 556 (1992); *Bragg by Bragg v. State Auto Ins. Assn.*, 350 Pa.Super. 257, 504 A.2d 344 (1986). Moreover, individuals do not have a vested right in the continued existence of an immutable body of negligence or tort law; a cause of action may indeed be extinguished by the legislature. *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897, 903–04 (1975) (with no-fault insurance law—40 P.S. §§ 1009.101 *et seq.* (repealed)—legislature abrogated tort action for negligently inflicted damage in relatively "minor" accidents); *Bond v. Gallen,* 292 Pa.Super. 207, 437 A.2d 7, 9 (1981), *aff'd,* 503 Pa. 286, 469 A.2d 556 (1983) (same); *Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (1955) (statute eliminated tort action against hotel for loss due to accidental fire).

In this case, appellant, a limited tort elector, has affirmatively agreed, in exchange for a lower premium rate, that any potential tort action for noneconomic damages is *precluded* where his injuries are not "serious." 75 Pa.C.S. § 1705(d). Appellant has no right to a jury trial if he has no cause of action. Therefore, appellant's argument on this issue is meritless.

Appellant next urges us to adopt the procedures used by the Michigan state courts in administering its limited tort law. In Michigan, the relevant statute provides that "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle *only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."* M.C.L. § 500.3135(1); M.S.A. § 24.13135(1) (emphasis added); *DiFranco v. Pickard,* 427 Mich. 32, 37, 398 N.W.2d 896, 900 (1986). Thus, Michigan's law allows tort actions for noneconomic damages only when an automobile accident results in

death, serious impairment of body function, or permanent serious disfigurement. Michigan's tort threshold includes the same language as Pennsylvania's limited tort threshold. 75 Pa.C.S. § 1702. However, Michigan's law is distinguishable from Pennsylvania's in that Michigan's is a comprehensive, mandatory system, which imposes limited tort coverage upon *all drivers*. In Pennsylvania, individuals may choose between the full tort and limited tort options. 75 Pa.C.S. § 1705.

Nonetheless, appellant argues that Michigan's case law ought to provide the procedural model for threshold determinations of whether a plaintiff has a threshold-level injury.[9] In *DiFranco, supra,* the Supreme Court of Michigan abandoned a traditional summary judgment analysis[10] and held that the question is almost always one for the jury:

> The question whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence would cause reasonable minds to differ as to the answer. *This is true even where there is no material factual dispute as to the nature and extent of the plaintiff's injuries.*

*DiFranco,* 427 Mich. at 38, 398 N.W.2d at 900 (emphasis added).

Despite the similarity in the way Michigan and Pennsylvania define the types of injuries which take potential lawsuits out of the limited tort category, we hold that the *DiFranco* procedural standard is not applicable in Pennsylvania. We point out that all insureds in Michigan are subject to limited

**9.** We are aware that the Commonwealth Court has suggested that the Michigan case law was implicitly adopted by our legislature when Pennsylvania enacted a limited tort law with identical threshold language. *Prudential v. Department of Insurance,* 141 Pa.Commw. 156, 595 A.2d 649, 661 (1991). However, this statement was made in the context of rate determinations by the Insurance Commissioner, and not with respect to the administration of limited tort thresholds. In any event, the Commonwealth Court's opinions are not binding precedent for this court.

**10.** Prior to the supreme court's decision in *DiFranco,* the traditional summary judgment analysis was utilized to make threshold determinations in Michigan. *See Cassidy v. McGovern,* 415 Mich. 483, 502, 330 N.W.2d 22 (1982).

tort coverage; the Pennsylvania election or "option" is not available in Michigan. Perhaps in response to this lack of choice, the *DiFranco* standard allows Michigan plaintiffs' claims to reach a jury even if there is no material dispute of fact on the threshold issue, and thus may allow most claims for noneconomic damages to be presented to a jury.

We are not persuaded that the path Michigan has taken is wise and we refuse to adopt it. The path would escalate litigation and ultimately increase the cost of insurance, and is therefore contrary to the goal of the Pennsylvania legislature. The Pennsylvania MVFRL enacted a two tier recovery system in order to lower insurance rates. It offers insureds different levels of protection based on the premium paid. *Berger v. Rinaldi, supra.* To permit all cases where plaintiffs claim serious impairment of body function routinely to go to the jury would not rein in cost but would prove as expensive as an unrestricted right to sue. To allow non-serious injury cases to proceed through trial to a jury would frustrate the legislature's goal of reducing litigation and the cost of insurance.

Our resolution of this matter permitting the trial court to make the threshold determination of the existence of serious impairment of body function where there is no dispute of fact serves this legislative goal. In the context of summary judgment the court must determine initially 1) whether the plaintiff as moving party has established that he or she has suffered serious impairment of a body function; 2) whether the defense as moving party has established that plaintiff has not suffered serious impairment of a body function; or 3) whether there remains a genuine issue of material fact for the jury to decide. *Curran v. Children's Service Center, Inc.,* 396 Pa.Super. 29, 578 A.2d 8 (1990). We emphasize that in deciding whether a material issue of fact exists for the jury, the judge should not focus on the injury but should focus on the nature and extent of plaintiff's impairment as a consequence of the injury.

We find support for our holding in other state courts where a similar limited tort paradigm is in effect. For example, in

New Jersey, persons buying automobile insurance now choose between two types of coverage, one of which limits the right to seek recovery of noneconomic losses resulting from automobile-related injuries. *Oswin v. Shaw,* 129 N.J. 290, 297, 609 A.2d 415, 418 (1992).[11] The first type is purchased at a lower premium rate and like Pennsylvania includes a "verbal threshold" (that is, one that is defined by words rather than a dollar amount). *Id.* Where this "limited tort" option is selected, the insured may recover noneconomic losses resulting only from those personal injuries that fit into one of nine specified categories.[12] *Id.* The alternative to the verbal threshold option is the traditional tort option, which allows unrestricted recovery of noneconomic damages. *Id.* An insured who makes no election is deemed to have chosen the limited tort option. *Id.*

In an appeal from summary judgment entered in favor of a defendant where the trial court found that the plaintiff had not reached the threshold for noneconomic damages, the New Jersey Supreme Court affirmed, describing its analysis as follows:

> If on a summary judgment motion the court decides, from whatever medical reports and other evidence submitted in support of and in opposition to the motion, that the injuries do not, as a matter of law, carry the plaintiff's case across the verbal threshold, then the defendant will prevail on the motion. If however the plaintiff's medical proofs survive the initial test and the court discovers, from all the informa-

11. As in Pennsylvania, this legislation was the culmination of several attempts to curb the quickly escalating cost of insurance premiums in New Jersey. *Oswin,* 129 N.J. at 296, 609 A.2d at 417.

12. The nine categories are described as: death; dismemberment; significant disfigurement; fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment. *Oswin,* 129 N.J. at 315, 609 A.2d at 427; N.J.S.A. 39:6A-8a.

tion presented on the motion, a legitimate factual dispute over the nature and extent of the injuries, then resolution of that dispute is of course for the jury. . . .

*Oswin,* 129 N.J. at 307, 609 A.2d at 423–24.[13]

In adopting the summary judgment analysis, the *Oswin* court noted that its "research failed to uncover any jurisdiction that applies a rule allocating to the court the determination of disputed facts in verbal-threshold cases." *Id.* at 310, 609 A.2d at 425. Instead, under the procedure adopted in *Oswin,* the court decides the threshold issue conclusively, either in favor of plaintiff or against plaintiff, only in the absence of a factual dispute. *Id.* at 313–14, 609 A.2d at 426–27.

New York applies this same analysis to its own "limited tort" law, which allows recovery for noneconomic damages only in "serious injury" cases. McKinney's Insurance Law, § 673, subd. 1; *Licari v. Elliott,* 57 N.Y.2d 230, 234, 455 N.Y.S.2d 570, 572–73, 441 N.E.2d 1088, 1090 (1982) (the court should decide the threshold question of whether the evidence would warrant a jury finding that the injury is "serious"). New York defines "serious injury" by the same list of specified categories of injuries as does New Jersey. The *Licari* court recognized that "any injury not falling within the new definition of serious injury is minor and a trial by jury is not permitted." *Licari,* 57 N.Y.2d at 235, 455 N.Y.S.2d at 573–74, 441 N.E.2d at 1091. The court held that the New York legislature's goal in abrogating the tort action for noneconomic damages in minor injury cases is served by assigning the

---

**13.** It is interesting to note that the New Jersey Legislature did not enact certain language suggested by then-Governor Kean during the drafting process of that state's limited tort law:

> Whether a plaintiff has sustained a "serious injury" must be decided by the court, and not by the jury. Otherwise the bill's essential purpose of closing the courthouse door to all lawsuits except those involving bona fide serious injuries will be diluted and the bill's effectiveness will be greatly diminished.

*Oswin,* 129 N.J. at 297, 609 A.2d at 418. The rejection of this language, however, did not prevent the *Oswin* court's application of a traditional summary judgment analysis to the threshold determination in New Jersey law. We view this as analogous to the Pennsylvania legislature's rejection of the Scanlon/Freind Amendment discussed *supra* at 1227.

threshold issue to the court, "in the first instance where it is properly raised, to determine whether the plaintiff has established a prima facie case of sustaining serious injury." *Id.* at 237, 455 N.Y.S.2d at 574, 441 N.E.2d at 1091.

We agree, and hold that upon the filing of a motion for summary judgment, where there is no substantial dispute of material fact that the plaintiff has not met the "serious impairment of body function" threshold, or that the plaintiff has indeed met the threshold, the court should make the determination as a matter of law. If, upon review of the undisputed record, the threshold has not been met, the case should be dismissed. If, on the other hand, the evidence conclusively establishes that the plaintiff has suffered "serious impairment of body function," then the jury may decide only the issues of liability and damages. We limit the jury's role to a finding of liability and damages in such a case because to do otherwise would put the plaintiff to the double burden of showing "serious impairment of body function" twice, once to the judge and again to the jury. Finally, if there is a substantial dispute of fact on the threshold issue, the question is one for the jury.[14] We further hold that a plaintiff may not

14. We reject the suggestion by appellee and amicus that even fact and credibility disputes raised at the threshold inquiry should be determined by the court. In addition, the trial court in this case, although finally determining that there was no triable issue of fact on the threshold question, seemed to suggest that a *sua sponte* decision on the matter could be made by the court, in the absence of a motion:

... [W]e hold that trial courts must have the ability on a case-by-case basis to determine whether injuries sustained by a Plaintiff are sufficient to constitute a serious impairment of body function. This determination should be made as early as possible in keeping with the goal of reducing costs. Without imposing a real limitation on the right to maintain a lawsuit, the limited tort option has no meaning.

To the extent this vague language endorses a *sua sponte* decision by the trial court, we reject it. Suggestions for using a "pretrial evidentiary hearing" on the threshold issue were similarly rejected by the *Oswin* court. 129 N.J. at 311, 609 A.2d at 425. That court held that such a procedure would not result in cost-savings, but that:

[w]hen a plaintiff prevails in the pre-trial hearing, a "double trial" situation is created, with both parties being required to produce their evidence—including medical experts, whose services are generally not inexpensive—twice: once at the pre-trial hearing, and again at trial. That requirement will reduce neither litigation time nor ex-

create a triable issue of fact with subjective evidence only. We agree with both New York and New Jersey's determinations that a plaintiff, to cross over the "serious injury" threshold, must show a material dispute of fact by objective medical evidence. *Oswin, supra* at 314, 609 A.2d at 427–29; *Licari, supra* at 239, 455 N.Y.S.2d at 574–75, 441 N.E.2d at 1092. Although we recognize that soft tissue injuries may be accompanied by subjective complaints of pain that are so severe that they result in a "serious impairment of body function," *Murray v. McCann, supra* at 30, 658 A.2d at 404, the impairment must be objectively manifested. Oral testimony alone (unless it is an admission of a party opponent) is never sufficient to support a motion for summary judgment, as credibility is at issue. *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989); *Nanty Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932); *Garcia v. Savage,* 402 Pa.Super. 324, 586 A.2d 1375 (1991). We underscore that the inquiry does not focus on the injury itself but whether the injury caused serious impairment of body function.

It remains for us to determine whether appellant presented enough evidence to create a triable issue of material fact on the question of whether he suffered a "serious injury" and thus may carry his case across the limited tort threshold. In this case, appellant claims that he sustained a serious impairment of body function.[15] This term is not further

penses, and will further congest the courts with "duplicative scheduling and trial needs."

*Id.* The procedure we adopt is a "middle of the road" approach that preserves the distinction between fact and law questions, without sacrificing the goal of litigation reduction. *Cf. DiFranco, supra* (jury should decide all threshold questions where reasonable minds may differ, even if there is no material dispute of fact). Moreover, we note that a trial court regularly issues rulings on demurrers, summary judgment motions and motions for judgment on the pleadings in all types of cases, which are all "threshold" legal determinations. No fact-finding is required in such decisions.

15. We expect that most litigation will involve the "serious impairment of body function" type of serious injury, especially since this category would include soft tissue-type injuries, and also because both death and permanent serious disfigurement are more easily proven from the outset.

defined by the relevant statutes. We have not found any Pennsylvania cases that conclusively define the term. We are persuaded, however, as was the trial court in this case, that the definition adopted by the Michigan courts in *DiFranco v. Pickard* is a useful one.[16]

The "serious impairment of body function" threshold contains two inquiries:

a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

b) Was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment ... In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious.

427 Mich. at 39, 398 N.W.2d at 901. *See also* Pennsylvania Standard Civil Jury Instruction 6.02(D) (1991).

An impairment involves more than the injury itself. The consequences of the injury must involve a serious impact for an extended period of time on a plaintiff's life. *See Oswin, supra* at 318, 609 A.2d at 429. It must interfere substantially with the plaintiff's normal activities and not impose only a mild or slight limitation. *See Licari, supra* at 236, 455 N.Y.S.2d at 573–74, 441 N.E.2d at 1091.

16. We note that our rejection of the procedural standard adopted by the Michigan court does not diminish the applicability of its discussion of the definition of "serious impairment of body function." The procedural paradigm adopted by Michigan may be more suited to the mandatory nature of the limited tort system in that state, as discussed in more detail *supra* at 1230–31, but our cases that have discussed the limited tort option and its "serious injury" threshold have properly looked to Michigan's law for guidance on defining the threshold terms. Pennsylvania's definition of threshold injuries is the same as Michigan's. *See Murray v. McCann, supra; Berger v. Rinaldi, supra.*

In deciding whether the impairment is "serious," we also consider other uses of the term in our laws. For example, Pennsylvania's Air Pollution Control Act defines "*serious* bodily injury" as one "which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ or mental faculty." 35 Pa.C.S. § 4009(d). *See also* 75 Pa.C.S. § 3742 (statute describing requirements for reporting an accident defines serious bodily injury as one which "creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any body member or organ").[17] Obviously, the word "serious" must be understood as "significant" and "important", involving an injury with consequences that are more than just minor, mild or slight.

 We turn to the facts in this case, and the trial court's conclusion that appellant's injuries could not constitute a "serious impairment of body function." We conclude that there is no genuine issue of material fact with respect to the nature and extent of appellant's injuries. First, it is undisputed that appellant was injured in the January 11, 1992 accident. Although he does not specify in his complaint what particular body function was impaired, we infer from the evidence that he claims impairment of the use of his right arm. His deposition testimony states that he could not use his arm throughout January 1992. Obviously, appellant suffered an "impairment" of a body function.[18]

17. In addition, in the criminal law, a *"serious* bodily injury" is one which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. 18 Pa.C.S. § 2301; *Com. v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273 (1990). *"*Serious provocation" is conduct "sufficient to excite an intense passion in a reasonable person." 18 Pa.C.S. § 2301; *Com. v. Lassiter,* 457 Pa. 582, 321 A.2d 902 (1974).

18. The trial court held that there was no impairment because the appellant has regained full range of movement. However, we do not agree that an impairment must be permanent to be "serious."

We must further analyze the impairment under the *DiFranco* outline, and considering our legislature's other uses of the term, to discover if the impairment was "serious." We focus on how the injuries affected the arm function, the extent of the impairment, the duration of the impairment, the treatment required to correct the impairment, and any other relevant factors. *DiFranco, supra* at 39, 398 N.W.2d at 901.

Appellant was out of work from the date of the accident until May 1992. He wore an arm sling during this time. On May 21, 1992, his doctors released him to work with a full range of motion and no restrictions. His return to work led to muscle soreness that quickly resolved. Treatment during this period of recovery involved physical therapy, moist heat, ultrasound, home exercises, and two injections. Appellant remains gainfully employed in his former occupation with no limitations on his duties. Appellant claims to have continued weakness, and does not engage in recreational bowling, weightlifting or softball,[19] but he receives no treatment or prescription medication for pain. The objective identification of a bone bruise was stated to be of no functional consequence.

We agree with the trial court's assessment that the evidence reveals an objectively identifiable injury which has resolved, leaving only slight limitations in arm function. Although we do recognize that subjective complaints of pain may result in a serious impairment of body function, this is not such a case. *See Murray v. McCann, supra.* We conclude that the record shows no serious interference with appellant's daily life, and that there is no triable issue of fact that appellant suffered a minor rather than a serious injury. We therefore affirm the entry of summary judgment below in favor of appellee.

Order affirmed.

SAYLOR, J., files a Dissenting Opinion.

19. Appellant identified no restrictions imposed by his doctors on these activities.

SAYLOR, Judge, dissenting:

I dissent, most respectfully, from the majority's decision to affirm the grant of summary judgment in favor of the defendant in this action for personal injuries sustained by the plaintiff in a motor vehicle accident. I do so because my review of the record persuades me that the issue of whether or not the injuries sustained by the plaintiff could constitute a serious impairment of body function was not so free and clear from doubt as to make summary judgment appropriate.

On January 11, 1992, Dodson was operating a motor vehicle which was struck by a vehicle operated by Elvey. As a result of the accident Dodson, who is right-handed, suffered injuries, including a right elbow fracture, rotator cuff damage to his right shoulder, cervical sprain, lumbar strain and iliopsoas strain. Dodson did not return to his job as a warehouse employee from the time of the accident until May 22, 1992, when he was released to work without restriction by his physicians.

At the time of the accident, Dodson was insured under a policy of automobile insurance issued by The Hanover Insurance Companies. Under this policy, Dodson had elected a limited tort option pursuant to the provisions of Section 1705 of the Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1701, *et seq.* ("the MVFRL").[1] An insured who elects the "limited tort" option, while remaining eligible to seek compensation for economic loss sustained in a motor vehicle accident caused by the negligence of another, is precluded from maintaining an action for any noneconomic losses unless the insured sustains a "serious injury." 75 Pa.C.S.A. § 1705(d).[2]

The MVFRL defines "serious injury" as "a personal injury resulting in death, serious impairment of body function, or

1. Section 1705 was added to the MVFRL in 1990, as part of a package of amendments contained in Act 1990, February 7, P.L. 11, No. 6 ("Act 6 of 1990").

2. A limited tort elector retains full tort rights and is eligible to recover for noneconomic loss under certain other exceptions, none of which apply in this case. *See,* 75 Pa.C.S.A. § 1705(d)(1)(2)(3).

permanent serious disfigurement." 75 Pa.C.S.A. § 1702.[3] Thus, under Section 1705, unless a limited tort elector suffers a serious injury, that individual cannot recover damages for noneconomic losses that are otherwise recoverable in tort actions.

On October 15, 1992, Dodson filed a personal injury action against Elvey seeking recovery for economic and noneconomic damages which Dodson sustained as a result of the accident.[4] Following a period of discovery, Elvey filed a motion for summary judgment asserting that Dodson's status as a limited tort elector precluded his recovery for noneconomic damages because his injuries were not serious. Dodson filed an affidavit in opposition to the motion with attachments consisting of his deposition testimony and two medical reports from a treating physician.

In ruling on Elvey's motion for summary judgment, the trial court held that determinations regarding the seriousness of a limited tort elector's injuries must be made by trial courts at the earliest possible stage in the proceedings. The trial court reasoned that the legislative history of 75 Pa.C.S.A. § 1705 revealed the intent of the Pennsylvania legislature to lower insurance premiums by reducing the number of small claims for pain and suffering, and that such cost savings could be realized only by allowing trial judges to determine the seriousness of a claimant's injuries as a matter of law. The trial court further reasoned that if this issue in all cases were to be submitted to a jury for resolution, the purpose of Section 1705 would be thwarted. The trial court then reviewed the record, and concluded that Dodson had not sustained an impairment

3. An amendment offered prior to the passage of Act 6 of 1990 sought to add the word "permanent" to the phrase "serious impairment of body function." This permanency requirement was rejected by the legislature in the final enactment of Act 6. *See, Legislative Journal–House,* No. 42, June 13, 1989, pp. 986–987; 75 Pa.C.S.A. § 1702.

4. Since Dodson survived the accident and does not contend that he suffered permanent serious disfigurement, his claim for noneconomic loss is premised on his assertion of serious impairment of body function.

of body function; accordingly, it granted Elvey's motion for summary judgment. This appeal followed.

In reviewing motions for summary judgment, Pennsylvania courts apply the following standard:

> Summary judgment may be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. Rule 1035(b), 42 Pa.C.S.A. The trial court must examine the record in the light most favorable to the nonmoving party and accept as true all well-pleaded facts in his or her pleadings as well as give him or her the benefit of all reasonable inferences drawn therefrom. *Dibble v. Security of America Life Ins.*, 404 Pa.Super. 205, 590 A.2d 352 (1991); *Lower Lake Dock Co. v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 577 A.2d 631 (1990). Finally, summary judgment should be granted only in cases that are free and clear from doubt. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991).

*Kelly by Kelly v. Ickes*, 427 Pa.Super. 542, 547, 629 A.2d 1002, 1004 (1993).

On appeal, Dodson contends that the trial court erred in granting summary judgment based upon its finding that Dodson did not suffer a serious injury, because such issue should have been submitted to a jury under the facts of this case. Elvey contends, however, that Dodson did not suffer a serious injury within the meaning of the statute and that the trial court properly determined this issue as a matter of law in a summary judgment proceeding since a limited tort elector is precluded from maintaining an action for noneconomic damages in the absence of a serious injury.

The MVFRL was enacted in 1984 to replace the Pennsylvania No–Fault Act, P.L. 489, No. 176 (1974). However, the cost of automobile insurance in Pennsylvania continued to escalate, and the trial court correctly discerned that one of the legislative purposes in enacting a limited tort option as part of the

omnibus amendments to the MVFRL in 1990 was to lower insurance premiums by reducing the number of small claims for pain and suffering. *See, Legislative Journal–House,* No. 11, February 7, 1990, pp. 202, 223; *see also, Berger v. Rinaldi,* 438 Pa.Super. 78, 82, 651 A.2d 553, 554–555 (1994). Thus, an insured who elects the limited tort option is precluded from maintaining an action for noneconomic damages, i.e., pain and suffering, unless he meets the statutory threshold of having suffered "serious injury." 75 Pa.C.S.A. § 1705.

In cases involving this issue, a defendant will typically move for summary judgment on the basis that the plaintiff has not met the "serious injury" threshold and is therefore precluded from maintaining the action for noneconomic losses, requesting judgment in its favor which if granted would terminate the litigation.

I have no disagreement with the proposition that a court may, in appropriate cases, determine this threshold issue in a summary judgment proceeding.[5] The majority holds, however, that upon the filing of a motion for summary judgment, where there is no substantial dispute of material fact that the plaintiff has or has not met the "serious impairment of body function" threshold, the court should make the determination as a matter of law. I submit, most respectfully, that this is the ultimate issue and will always be in dispute in a summary judgment proceeding challenging a limited tort elector's right to proceed to trial. In my view, under Pennsylvania's traditional summary judgment analysis, judgment as a matter of law is appropriate only in the clearest of cases. If there is any doubt regarding the seriousness of a plaintiff's injuries, I believe that the issue should be submitted to a jury. I would also note that in certain instances, while there may be no dispute over the objective manifestation of an impairment as revealed by a medical diagnosis, differing inferences may be drawn as respects the seriousness of such impairment thereby

5. It should be noted that the Legislature rejected a proposed amendment which would have provided that the determination of whether an injury was serious would always be a question of law for the trial court. *See, Legislative Journal–Senate,* No. 44, December 11, 1989, pp. 1430–1479.

making, in my view, summary judgment inappropriate in such a case.

In analyzing the seriousness of a plaintiff's injuries I would, as does the majority, look to Michigan jurisprudence for guidance since the MVFRL's threshold is modeled after similar language in Michigan's no-fault statute. *See, Legislative Journal–House,* No. 42, June 13, 1989, pp. 986–987. The Michigan Supreme Court most recently addressed this issue in the case of *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896 (1986). The *DiFranco* court began its analysis of the "serious impairment of body function" threshold by identifying the following two inquiries:

 a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

 b) Was the impairment of body function serious?

It determined that "the focus of these inquiries is not on the injuries themselves, but how the injuries affected a particular body function," and held that generally, medical testimony would be needed to establish the existence, extent, and permanency of the impairment.[6] The court observed that while identifying the body functions which were impaired is a relatively simple task, determining whether the impairment is serious requires a more complicated evaluation of certain

---

6. *DiFranco* made it clear, however, that recovery for noneconomic damages is not limited to plaintiffs whose injuries can be "seen or felt":

> We disapprove of those cases which have automatically disregarded certain types of evidence merely because it was based upon plaintiff's subjective complaints or the symptoms of an injury. An expert's diagnosis and the basis for it (e.g., the plaintiff's complaints, the physician's observations, and test results) can be adequately challenged at trial through cross-examination and the presentation of contrary medical evidence.

Thus the court held that the "serious impairment of body function" threshold requires a plaintiff only to prove that his noneconomic losses arose out of a medically identifiable injury which seriously impaired a body function. *DiFranco v. Pickard,* 427 Mich. at 74–77, 398 N.W.2d at 918. *See, Murray v. McCann,* 442 Pa.Super. at 36, 658 A.2d at 407 (1995) ("[T]here is no wording in the applicable statutory language which limits recovery of non-economic damages to a plaintiff whose injuries can be seen or felt by a clinical test. The issue, in accordance with the language used, is whether the injuries have seriously impaired a bodily functioning.")

factors, which it proceeded to delineate and discuss: (1) the extent of the impairment; (2) the particular body function impaired; (3) the length of time the impairment lasted; (4) the type of treatment required to correct the impairment; and (5) any other relevant factors.

The *DiFranco* court, in elaborating on these factors, noted that the extent of an impairment is often expressed in numerical terms, such as a percentage limitation on movement, and that the particular body function impaired may make a difference in this determination. Regarding the duration of the impairment, it noted that a permanent impairment is more serious than a temporary impairment of like character, but that a plaintiff's complete recovery should not negate the fact that he sustained a serious impairment of body function for a significant period of time. The type of treatment required to correct the impairment may also be relevant since, for example, an impairment which can be corrected only through surgery is more serious than treatment involving only bed rest. Furthermore, the plaintiff's abilities and activities before and after the accident may be relevant to the extent that they establish the existence, extent and duration of an impairment of function.

I find this analysis thoughtful and reasoned, and would explicitly adopt it for purposes of providing guidance to trial courts and juries in Pennsylvania faced with this issue.[7]

The record in this case indicates that immediately following Elvey's collision with Dodson, Dodson visited a hospital emergency room where he was examined, given a sling for his right arm and shoulder, and released. Following his discharge from the hospital emergency room, Dodson underwent a four month period of recuperation. During this time, Dodson was examined by Dr. Fulchiero, who Dodson visited on approximately six occasions. Dr. Fulchiero determined that Dodson suffered rotator cuff damage in his right shoulder and a right elbow fracture as a result of the accident and that his range of motion was restricted in the extremes, and recommended that

7. These criteria have been embodied in Instruction 6.02D of the Pennsylvania Suggested Standard Civil Jury Instructions.

he wear a sling for his right arm and shoulder. In addition, Dr. Fulchiero diagnosed post-traumatic impingement syndrome in his right shoulder and recommended that he take certain prescription drugs, including Darvocet and Orudis, and injected Dodson's shoulder with corticosteroid and xylocaine. Dodson began a regimen of physical therapy for his right arm and shoulder at Mercy Hospital on the recommendation of Dr. Fulchiero, which included progressive resistance exercises, electrical stimulation, and hydrotherapy three to four times daily, for seven days following Dodson's initial visit, and three times per week thereafter for several weeks. Dodson also was placed on a home exercise program of isometrics and theraband. During the entire four month period of treatment, Dr. Fulchiero did not allow Dodson to return to work.

On the advice of his attorney, Dodson was also examined by Dr. Victoria Smith on January 24, 1992. Dr. Smith diagnosed Dodson as also suffering from cervical sprain, lumbar strain and iliopsoas strain, and noted that he had a limited range of motion in his right elbow and shoulder. Dr. Smith also recommended a regimen of physical therapy, and on February 14, 1992, injected the trigger point in Dodson's right scapula with Depo Medrol and Lidocaine. On March 6, 1992, Dr. Smith noted that Dodson had experienced a moderate muscle spasm in his right scapula. Dodson continued to see Dr. Smith, and in April, 1992, began a reconditioning program at Keystone Rehabilitation Systems to expedite his release to work. The treating physical therapist noted on April 6, 1992 that Dodson was experiencing muscle spasms in his right shoulder.

Dr. Smith indicated in a report dated August 3, 1992 that Dodson would experience mild to moderate long term upper extremity weakness and that the fracture of his elbow made it more likely that he would develop arthritis in the future. In a follow-up report dated October 12, 1992, Dr. Smith indicated that Dodson had a full range of motion with some stiffness at the extremes and experienced a slight decrease in strength in his right upper extremity as a result of the injury.

At his deposition, taken on July 23, 1993, Dodson indicated that he had worn the sling, which partially immobilized his right arm and shoulder, for approximately four months following the accident. During this time, Dodson did not perform his duties as a warehouse employee, which involved lifting. He also complained of continuing pain in his right elbow and shoulder which prevents him from performing certain pre-accident activities, including softball, bowling and weight lifting. In addition, he experiences problems with his right elbow in cold weather, and must carry his small child in his left arm.

Based on this evidence, the trial court determined that Dodson did not sustain any impairment of body function. I would conclude, however, that when this record is reviewed with reference to the relevant criteria of *DiFranco*, Elvey's right to judgment was not so free and clear from doubt as to make the entry of summary judgment appropriate. Stated otherwise, Dodson proffered evidence sufficient to withstand the defendant's motion for the summary termination of his action.

There was medical evidence that Dodson sustained a fracture in his right elbow and rotator cuff damage in his right shoulder, and that the range of motion in his right arm and shoulder was limited for at least four months following the injury. Dodson was unable to return to work because of his injuries, and he indicated that because of pain in his arm and shoulder, he was unable to perform certain pre-accident activities. Dodson also experienced muscle spasms in his right shoulder, was injected with various medications, and underwent a four-month period of physical therapy to recondition his elbow and shoulder. Also, Dodson will experience long-term upper extremity weakness and may develop arthritis in his right elbow as a result of his injuries. Thus, I would hold that Elvey was not entitled to judgment as a matter of law and that the issue of whether or not Dodson suffered a serious impairment of body function should have been submitted to a jury. Because the majority holds otherwise, I respectfully dissent.