### Harshbarger v. Seidel

*William P. Douglas,* for plaintiff.
*Robert P. Wilkison,* for defendant.

SACAVAGE, *J.,* February 7, 1996—Before the court is defendant's motion for summary judgment. On August 28, 1993 the motor vehicle being driven by the defendant collided with another vehicle. The plaintiff was a passenger in the defendant's vehicle at the time of the accident. The defendant asserts the plaintiff is "precluded from recovery in this action as a person barred by a limited tort election in that her injuries as demonstrated by the medical records and testimony do not constitute 'serious impairment of body function.' "

Rule 1035 of Pennsylvania Rules of Civil Procedure provides as follows:

"(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits.

"(b) The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . ."

In deciding a matter for summary judgment, the court must resolve all facts in the light most favorable to

the non-moving party and resolve all doubts as to the existence of material facts against the moving party. *Levenson v. Souser,* 384 Pa. Super. 132, 557 A.2d 1081 (1989). Further, summary judgment may be entered in cases that are clear and free from doubt. *Incollingo v. Maurer,* 394 Pa. Super. 352, 575 A.2d 939 (1990).

With this standard in mind we turn to the issues in the case at bar. On February 7, 1990 the legislature amended the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq. One significant change to the law was the requirement that insurance companies provide their private motor vehicle insureds with an option of either "full tort" coverage or "limited tort" coverage. Those who select the "limited tort" option are permitted to seek compensation for economic loss, but unless their injury is a "serious injury," each person bound by limited tort election is precluded from maintaining an action for any non-economic loss.[1]

Initially, plaintiff raised the issue of whether the 16-year-old plaintiff was bound by her parent's election. This claim has since been abandoned. Thus, the remaining issues before this court are:

(1) Did the plaintiff suffer "serious impairment of a body function;" and

(2) Is the determination of serious impairment of a body function a question of law to be decided by the court or one of fact to be decided by the fact-finder?

The second issue raised has recently been decided by an en banc panel of the Pennsylvania Superior Court. In *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995) the Superior Court held that the determination of whether a plaintiff's injury reached the limited tort

---

1. There are some exceptions, none of which are relevant to the case before us.

threshold, *i.e.,* whether it constitutes "serious impairment of body functions," is initially a question of law for the court pursuant to a motion for summary judgment. Specifically, the Superior Court held:

"We agree, and hold that upon the filing of a motion for summary judgment, where there is no substantial dispute of material fact that the plaintiff has not met the 'serious impairment of body function' threshold, or that the plaintiff has indeed met the threshold, the court should make the determination as a matter of law." *Id.* at 497, 665 A.2d at 1232.

The court continued as follows:

"We further hold that a plaintiff may not create a triable issue of fact with subjective evidence only. . . . We underscore that the inquiry does not focus on the injury itself but whether the injury caused serious impairment of body function." *Id.* at 497-98, 665 A.2d at 1232-33.

Thus, we must make the initial determination whether the plaintiff presented enough evidence to create a triable issue of material fact on the question of whether she suffered a "serious injury" thereby passing the limited tort threshold.

The case before us, as in *Dodson,* involves a claim of serious impairment of body function. As to what constitutes "serious impairment of body function" the *Dodson* court recognized the usefulness of the definition of the term as set forth by the Michigan courts in *DiFranco v. Pickard.* The definition is as follows:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment. . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious. 427 Mich. at 39, 398 N.W.2d at 901." *Dodson, supra* at 499, 665 A.2d at 1233-34.

The *Dodson* court further elaborated upon the definition as follows:

"An impairment involves more than the injury itself. The consequences of the injury must involve a serious impact for an extended period of time on a plaintiff's life. . . . It must interfere substantially with the plaintiff's normal activities and not impose only a mild or slight limitation." *Id.* at 499, 665 A.2d at 1234. (citations omitted)

Finally, the *Dodson* court looked to the definition of "serious bodily injury" in the Pennsylvania Air Pollution Control Act. The Act defines serious bodily injury as one "which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ or mental faculty." *Id.* at 500, 665 A.2d at 1234, quoting 35 Pa.C.S. §4009(d).

With the *Dodson* analysis in mind we turn to the facts presented to us, in the light most favorable to the plaintiff. The automobile accident occurred on Au-

gust 28, 1993. The plaintiff was treated and released the same day from the Evangelical Community Hospital Emergency Room. The emergency room notes indicate x-rays were taken of the plaintiff's chest, spine, elbows and hip and were all negative. The diagnosis was multiple contusions.

Plaintiff returned to the emergency room on August 29, 1993 due to abdominal soreness. A CAT scan was done and found unremarkable. Plaintiff was discharged the same day with a diagnostic impression of abdominal contusion. The emergency room records contain nothing with regard to any injury to plaintiff's head area.

On November 9, 1993, the plaintiff sought medical treatment from her family physician, Dr. Ginsberg, for headaches. Ginsberg diagnosed muscle tension headaches and confirmed said diagnosis following a CAT scan he had ordered was found unremarkable.

On April 7, 1994 the plaintiff sought treatment from W.H. Jeffreys, M.D., a neurologist, for her headaches. Dr. Jeffreys ordered an EEG, MRI and had the CAT scan previously performed re-interpreted. The reports from all were negative and unremarkable. Dr. Jeffreys diagnosed plaintiff with "traumatic headaches" and "post-traumatic syndrome." Dr. Jeffreys referred the plaintiff to a psychologist on June 9, 1994. Dr. Jeffreys last saw plaintiff on October 21, 1994. The psychologist last saw the plaintiff on June 27, 1995, and concluded she should be able to function fairly well.

We also find significant the summary of Dr. Gensemer, the neuropsychologist who found the plaintiff, a 17-year-old high school student, had been under "a great deal of stress" and his finding that she was having trouble with "emotional adjustment."

Finally, all of the reports indicate that the headaches are not constant. When they occur, aspirin or other

medications seem to provide the appropriate relief. The headaches have in no way seriously impaired the plaintiff's activities or her day-to-day affairs.

Given all of the above, it is clear that this is *not* the type of injury or serious impairment of bodily function the legislature contemplated as an exception to the limited tort option and for all the foregoing reasons we enter the following:

### ORDER

And now, February 7, 1996, after consideration of the briefs submitted and the arguments presented, it is ordered and directed that the defendant's motion for summary judgment is granted.