## Yannuzzi v. Reed

C.P. of Northampton County, no. 1995-C-3377.

*Jerry R. Knafo,* for plaintiff.
*Kent H. Herman,* for defendants.

FREEDBERG, *P.J.,* July 9, 1996—This matter is before the court on the defendants' motion for summary judgment. The issue presented is whether, under the "limited tort option" of Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., there is a material issue of fact as to the existence of a serious injury requiring determination by a jury.

In *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), the Superior Court en banc dealt exten-

sively with the limited tort option provision. Writing for the majority, Judge Beck stated:

"The limited tort option authorizes the insurer to offer automobile insurance coverage at reduced premium rates to insureds who give up the right to sue for noneconomic damages, such as pain and suffering. A limited tort elector may sue for noneconomic damages only if he or she suffers 'serious injury' in an automobile accident. 75 Pa.C.S. §1705(d).

"Serious injury is statutorily defined as death, serious impairment of body function or permanent serious disfigurement. 75 Pa.C.S. §1702." *Id.* at 484, 665 A.2d at 1226.

The legislation was the culmination of attempts to curb the escalating cost of insurance premiums. *Id.* at 495 n.11, 665 A.2d at 1231 n.11.

In *Dodson,* the Superior Court held that the trial court should make a threshold determination of the existence of serious impairment of body function when there is no dispute of fact. The court stated:

"We emphasize that in deciding whether a material issue of fact exists for the jury, the judge should not focus on the injury but should focus on the nature and extent of plaintiff's impairment as a consequence of the injury." *Id.* at 494, 665 A.2d at 1231. Thus, it is only where there is "a substantial dispute of fact on the threshold issue, [that] the question is one for the jury." *Id.* at 497, 665 A.2d at 1232.

A plaintiff, to cross over the "serious injury" threshold, must show a material dispute of fact by objective medical evidence. Thus, a plaintiff may not create a triable issue of fact with subjective evidence only. With

reference to soft tissue injuries, the court noted that, while it recognized that such injuries may be accompanied by subjective complaints of pain that are so severe that they result in a "serious impairment of body function," the impairment must be objectively manifested.

The court adopted a definition of serious impairment ·of body function offered by the Supreme Court of Michigan in *DiFranco v. Pickard*, 427 Michigan 32, 398 N.W.2d 896 (Mich. 1986). The definition is as follows:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious." *Dodson, supra* at 499, 665 A.2d at 1233-34.

The Superior Court stated:

"An impairment involves more than the injury itself. The consequences of the injury must involve a serious impact for an extended period of time on a plaintiff's

life. . . . It must interfere substantially with the plaintiff's normal activities and not impose only a mild or slight limitation." *Id.* at 499, 665 A.2d at 1234. (citations omitted)

The word "serious" is equated with "significant" and "important" and involves an injury with consequences that are more than just minor, mild, or slight.

Consideration of the facts in *Dodson* is instructive. In that case, Dodson, who was the appellant, sustained certain injuries in a motor vehicle accident on January 11, 1992. He sought damages including noneconomic damages. When defendant Elvey raised the limited tort election as a defense to the claim for noneconomic damages, Dodson contended that he had sustained a "serious injury." Plaintiff's evidence showed that he immediately felt pain in his low back, the back of his head, his right arm and shoulder, and developed a frontal headache secondary to mid-forehead contusion immediately after the collision. He was taken to the emergency room, where x-rays were taken, and he was given a sling for his right arm. He could not use his arm throughout the month following the collision. He did not return to his job as a warehouseman for about four months and wore the sling the entire time that he was out of work. He was under the treatment of an orthopedist who initiated hydrotherapy and diagnosed rotator cuff damage and a fractured elbow. Dodson had six office visits with the orthopedist from January 16 to May 22, 1992, then attended a second physician who diagnosed cervical sprain, lumbar strain and iliopsoas strain. He visited this doctor eight times between January 24 and August 28, 1992. Initially, he had a decreased

range of motion secondary to muscle tightness and limited right elbow and right shoulder range of motion. He had pain or palpation in his low back. Heat and ultrasound were applied to his back, and he was ordered to do exercises for his shoulder. He received injections. He participated in physical therapy, taking nine treatments from April 9 until April 30, 1992. He was then released to work full-time without restriction on May 21, 1992, with a full range of motion. Upon his return to work, he had brief muscle soreness, but this quickly resolved. Subsequently, by July 1992, he complained of some elbow and forearm weakness. Examination showed some decreased strength, and he was instructed to continue with home exercises. By August 7 he demonstrated full range of motion with some stiffness at the extremes. There was a slight decrease in right upper extremity strength, but no neurovascular deficits. The doctor opined that he would "suffer long term with some mild to moderate right upper extremity weakness and more likely than not would develop arthritis in the future." *Id.* at 489, 665 A.2d at 1228. It was also predicted that his soft tissue injury might be symptomatic periodically for the next two to three years. At his deposition, appellant stated that he continued to feel constant drumming pain primarily in his shoulder but sometimes in his elbow as well. He related that he did the same work as before the accident, but that it was harder to do with increased pain. He noted no treatment or prescription medication for the pain other than occasional self-treatment with Tylenol. He reported that he was unable to bowl, play softball, or lift weights as he did before the accident. The Superior Court con-

cluded that the record showed no serious interference with appellant's daily life and that there is no triable issue of fact that appellant suffered a minor rather than a serious injury. On this record, it characterized the appellant as having only slight limitations in arm function. It concluded that summary judgment had properly been entered in favor of the defense.

In the instant case, plaintiff was injured in an auto collision on May 14, 1993. On that day he was insured by the Ohio Casualty Insurance Company and had selected the limited tort option under the policy. He testified at deposition that he was 73 years old at the time of the collision and was employed as a janitor. He struck his head on the windshield of the car and spent three days in the hospital. He claims that he experienced dizzy spells because he hit his head on the windshield of his vehicle. After being released from the hospital, he was treated by his family physician, Dr. B. K. Mehta.

On May 25, 1993, Dr. Mehta diagnosed plaintiff as having acute low back pain, post-traumatic headache, right rib sprain, and right knee sprain. On June 24, 1993, Mehta indicated acute lumbar sprain. On July 16, 1993, an MRI finding indicated a "suggestion of a small left paramedian/lateral disc herniation at the L1-2 level." The July 23, 1993 records of Dr. Mehta indicate a herniated nucleus pulposis at L1-2. On July 27, 1993, Dr. Mehta's impression was of lumbar sprain. On August 3, 1993, Mehta indicated a herniated disc at L1-2 and ordered no lifting. On October 7, 1993, Mehta continued to diagnose him with lumbar sprain. On October 21, 1993, Mehta noted that the sprain had

improved. On September 18, 1995, Mehta prescribed additional physical therapy.

Plaintiff did not return to work after the accident, but testified that he was ready to retire at that time, anyhow. Plaintiff reported that he takes one cyclobenzaprine pill at night and that it eases his pain so that he can sleep. He underwent physical therapy from the summer of 1993 to November 1993, and for a part of 1995.

With regard to his back, he testified that some days it is alright but said that if he helps around the house, he experiences pain which eventually goes away. The only other problem that he experiences is occasional ringing or pounding in his ear, which comes with bad weather. There are some days when he has no pain in his back. He wears a back brace when he goes out. When asked if there are any things that he was able to do before the accident that he could not do now, he was non-responsive. He reported occasional headaches and said that he did not have headaches before the accident. He does a lot of walking which helps him. He testified that the woman with whom he now resides helps him do things that he is not physically able to do. However, he did not provide any details. He had previously lived with a daughter but left because he had a misunderstanding with her, and at that time he moved in with the woman with whom he currently resides.

There are no material issues of fact, and the case is, therefore, appropriate for entrance of a summary judgment by the court. The facts recited above are drawn entirely from the testimony of the plaintiff and the report

of his physician. In evaluating the evidence we are mindful of the directive of *Dodson* that we focus not on the injury itself but whether the injury caused serious impairment of body function. Further, the injury must interfere substantially with the plaintiff's normal activities and not impose only a mild or slight limitation. Applying these tests, we conclude that plaintiff has not sustained a serious impairment of body function. He stopped working at age 73 because he was ready to retire and not because of limitations resulting from the injury. His complaints are of occasional pain triggered by doing work around the house. He reports taking only one pill a night which enables him to sleep and that at least a portion of the time he is without pain. There was no surgery. There is no substantial restriction of mobility. There is no evidence of increased risk of future surgery. There is no evidence of severe limitation of body function. The treating physician did not testify to severe impact on body function. There was no showing that the condition will worsen as time passes. We conclude that the injuries had a modest impact on his functioning, that the duration of the impact was limited, the treatment was modest and not intrusive, and that the limitations which he currently describes are entirely consistent with what would be expected for a man of his age apart from the consequences of the vehicle collision.

In concluding that defendant's motion for summary judgment with reference to plaintiff's noneconomic losses should be granted, we note the following from *Adelman v. Conigliaro,* 68 Bucks 140 (1996):

"A suggested purpose behind the implementation of the limited tort option is the reduction of pain and

suffering litigation. Plaintiff consciously chose to accept the benefits of a reduced premium in exchange for his right to collect noneconomic damages for minor injuries. If the courts decline to make a distinction between serious and nonserious injuries resulting from automobile accidents, the goals and objectives of the legislature in drafting such legislation will be frustrated.''

Because there is no material issue of fact and because the evidence from plaintiff is insufficient to establish a serious injury, summary judgment in favor of the defendant is required.

Wherefore, we enter the following order:

## ORDER

And now, July 9, 1996, the motion for summary judgment by defendants is granted as to plaintiff's claims for noneconomic loss.