**Rueckl v. Croyle**

C.P. of Armstrong County, no. 1993-1533-Civil.

*Glenn Douglas Delfi,* for plaintiff.
*Lee A. Montgomery,* for defendant.

VALASEK, *J.,* October 14, 1996—Before the court for decision are plaintiff's and defendant's motions for summary judgment. The issue presented is whether

plaintiff has met the "serious injury" threshold for purposes of the limited tort option created by the Motor Vehicle Financial Responsibility Law.[1] Plaintiff's electing the limited tort option on her automobile insurance policy precludes her from recovering noneconomic damages unless she has sustained a serious injury.[2] Serious injury is defined as death, serious bodily impairment or permanent serious disfigurement. 75 Pa.C.S. §1702.

Under *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), the Superior Court held that where there is no substantial dispute of material fact that the plaintiff has not met the "serious impairment of body function" threshold, or that the plaintiff has met the threshold, the trial court should make the initial determination as a matter of law. If the serious injury threshold has not been met, the case should be dismissed. If the evidence conclusively establishes that the plaintiff has suffered "serious impairment of body function," then the jury may decide only the issues of liability and damages. Finally, the court held that if there is a substantial dispute of fact concerning the threshold issue, the question is one for the jury. The court further held that a plaintiff must show a material dispute of fact by objective medical evidence and may not create a triable issue of fact with subjective evidence only.

---

1. 75 Pa.C.S. §1701 et seq.

2. 75 Pa.C.S. §1705(d) states in part:

"(d) Limited tort alternative.—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss, . . . ."

The Superior Court found that two inquiries must be addressed to determine if the serious impairment of body function threshold has been met:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of body function serious?" *Dodson, supra* at 499, 665 A.2d at 1233, citing *DiFranco v. Pickard,* 427 Mich. 32, 39, 398 N.W.2d 896, 901 (1986).

The focus of these inquiries is on how the injuries affected a particular body function. The four factors that are considered in determining whether a plaintiff has suffered a "serious impairment of bodily function" include (1) the extent of the impairment, (2) the particular function impaired, (3) the length of the impairment, and (4) the treatment required to correct the impairment. *Id.*

The court further stated:

"An impairment involves more than the injury itself. The consequences of the injury must involve a serious impact for an extended period of time on a plaintiff's life. . . . It must interfere substantially with the plaintiff's normal activities and not impose a mild or slight limitation." *Id.* at 499, 665 A.2d at 1234.(citations omitted)

Plaintiff maintains that she has met the serious injury threshold. She was injured on April 5, 1992, when the motor vehicle in which she was driving was struck from behind by a motor vehicle driven by the defendant. In her complaint, plaintiff maintains that she suffered neck pain and spasms; back pain; stiffening in the neck; disc bulge; cervical strain and sprain; shoulder pain and numbness; loss of strength of her left hand and arm; and whiplash injuries. According to the testimony in her deposition, although plaintiff did not receive any medical treatment immediately after the accident, she

sought treatment with her family physician, Dr. Mark Carlson, within a day or several days thereafter. Dr. Carlson referred her to Butler Physical Therapy, where she received treatment in the nature of heat therapy and ultrasound intermittently for a year, beginning in April 1992. Dr. Carlson then referred the plaintiff to Dr. David Girdany, who suggested that plaintiff receive trigger point pain injections. Plaintiff received approximately 40 to 45 injections over the course of five sessions. The plaintiff did not respond to the injections. In September 1994, plaintiff was then referred to the Harmarville Rehabilitation Center pain clinic, where she was taught how to do stretching and strengthening exercises intended to alleviate her pain. Plaintiff's outpatient treatment at Harmarville lasted five weeks. While at Harmarville, plaintiff underwent a functional capacity evaluation. The evaluation determined that plaintiff's frequent lifting is limited to a maximum of 10 pounds and her frequent pushing and pulling is limited to seven pounds. The evaluation also placed plaintiff in a modified light work category.

In his deposition, plaintiff's expert witness, Dr. David Helfrich, who treated the plaintiff at Harmarville, stated his diagnosis of the plaintiff to be chronic myofascial pain syndrome. Dr. Helfrich stated that the plaintiff had impaired cervical spine flexion and extension. Dr. Helfrich also testified that the plaintiff was diagnosed with major depression, a result and psychological component of her chronic pain syndrome. The plaintiff was prescribed antidepressant medication for this psychological condition. The medication did not apparently cure plaintiff of her depression because when the defendant's independent medical examiner, Dr. Hirsh Wachs, examined her in February 1996, he noted that the plaintiff was still depressed.

Plaintiff had worked as a sales representative for a cigarette manufacturer. After the accident, plaintiff testified that she worked only half days during April and May of 1992. Plaintiff testified that her job performance was low because her injuries made it difficult for her to drive and to lift boxes in connection with her sales calls.

In her deposition, plaintiff testified that the injuries she sustained from the accident, including neck and shoulder pain, numbness and weakness, prevented her and still prevent her from participating in the same hobbies that she had enjoyed prior to the accident, such as snow skiing (particularly downhill racing), windsurfing, water-skiing and mountain biking. Dr. Helfrich also testified that the plaintiff was not capable of participating in such activities. She testified that she participated in these activities nearly every weekend before the accident and that they were her primary social and recreational outlet. She testified that she is currently able to ski for one hour, ride a stationary bike and lift weights for rehabilitative purposes. Plaintiff cannot do yard work and can only do a limited amount of light housework, such as vacuuming. She cannot drive long distances. Plaintiff was prescribed Demerol for her pain and takes Ibuprofen or anti-inflammatories. She continues to see her family physician, Dr. Carlson, once every six months.

The defendant argues that the plaintiff has not suffered a serious injury. The defendant points to the fact that surgery was not necessary, that the treatment was conservative, and that plaintiff was able to return to work after the accident and is able to perform common day-to-day activities.

10

Based on the evidence presented and the standard set forth in *Dodson,* the court finds that the injuries the plaintiff sustained in the accident have caused a serious impairment of her body function. The plaintiff has suffered from her injuries for over three and a half years. The pain she experiences is not occasional, but chronic, and requires prescription pain medication. Her injuries have interfered substantially with her daily activities. The medical evidence indicates that the plaintiff's ability to lift and pull is restricted and that she is impaired in the bending of her neck. Her injuries caused her difficulty in performing her job because of her ability to do only light duty work. Additionally, she cannot participate in normal daily activities, such as cleaning and driving, without experiencing pain. The plaintiff is unable to pursue the active lifestyle she once enjoyed. She cannot take part in the recreational activities that she used to frequently participate in, such as snow skiing, water-skiing and mountain biking. The change in her lifestyle since the accident has been dramatic because of the limitations her injuries have imposed on her social and recreational activities, which played a central role in her life as a single person. The plaintiff's injuries have not responded to treatment and even trigger point pain injections have not helped her. Depression, from which she is still suffering and which requires continuing treatment with antidepressant medication, has also impacted the plaintiff's life. All these impairments and limitations are far more than slight in the degree they have affected plaintiff's life— they are, indeed, quite substantial. Therefore, because the court concludes that the plaintiff has met the "serious

impairment of body function" threshold, she is not precluded from recovering noneconomic damages.

Accordingly, the defendant's motion for summary judgment will be denied and dismissed and the plaintiff's motion will be granted by appropriate order.

## ORDER

And now, October 14, 1996, for the reasons set forth in the foregoing opinion, it is hereby ordered, adjudged and decreed that defendant's motion for summary judgment be denied and dismissed and that plaintiff's motion for summary judgment be granted.