**Hassinger v. Gates**

C.P. of Lancaster County, no 4966 of 1993.

*Patricia Carey Zucker,* for defendant.
*Howard C. Pressman,* for plaintiffs.

PEREZOUS, *J.,* May 9, 1997—The sole question before us on defendant's motion for partial summary judgment is whether plaintiffs' action comes within the "serious injury" exception to the noneconomic loss prohibition under the "limited tort" option of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1705(a). The parties agree that no other statutory exception applies (see section 1705(d)), that *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), *alloc. granted,* 544 Pa. 608, 674 A.2d 1072 (1996) is controlling, and that the applicable subcategory of serious injury is "serious impairment of body function" under section 1702. Following the Superior Court and adopting our own prior analysis of this issue in *Washington v. Baxter,* 74 Lanc. L. Rev. 558 (1995), *aff'd,* 695 A.2d 447 (Pa. Super. March 5, 1997), we grant defendant's motion and hold that plaintiffs are barred from seeking noneconomic damages.

Neither the parties' submission of numerous non-controlling lower court opinions, nor our own research, has revealed any authority to contradict the course charted by *Dodson.* On the contrary, *Dodson's* progeny show, and the instant parties do not dispute, that these cases must each be resolved on their own unique facts. That is, the legislative omission to supply a list of criteria defining *serious injury,* or in the matter before

us *serious impairment of body function,* makes a judicial determination necessary. *Id.* at 491, 665 A.2d at 1229-30.

The other significant clarification by *Dodson* gives plaintiffs the burden of establishing serious injury in order to avoid summary judgment based on election of the limited tort option,[1] *id.* at 484, 665 A.2d at 1226; however, this guidance is undermined later when the opinion states "the court must determine initially . . . (2) whether the defense as moving party has established that plaintiff has not suffered serious impairment of a body function; or (3) whether there remains a genuine issue of material fact for the jury to decide." (citation omitted) *Id.* at 494, 665 A.2d at 1231. Since first addressing this inconsistency [2] shortly after *Dodson* was handed down, we have found no reason to alter our view of the matter:

"Any ambiguity as to which party bears the primary burden—plaintiff, of showing serious impairment; or, defendant, of showing no serious impairment—is secondary to the primacy of the trial court's role; as a practical matter, only where the court believes that serious impairment of body function exists does the matter

---

1. Where the insured makes no election, the full tort option is automatically deemed to apply (*i.e.,* an affirmative waiver of common-law rights is required to enter the realm of limited coverage and receive concomitant premium reduction). Section 1705(a)(3) of MVFRL: "the named insured [. . .] [is] conclusively presumed to have chosen the full tort alternative," unless a contrary choice is made of the limited tort option.

2. It may be to clarify situations such as these that our Supreme Court has agreed to review *Dodson.* As noted in the quoted reference, *infra,* to our prior *Washington* opinion, we skirted the ambiguity by requiring the judge to determine the serious impairment issue based on all the evidence rather than focus on who had what burden. Subsequent cases seem to support this approach.

survive summary judgment and go to a jury. *Id.* at 15 ('We emphasize that in deciding whether a material issue of fact exists for the jury, the judge should not focus on the injury but should focus on the nature and extent of plaintiff's impairment as a consequence of the injury.') and 16 [citing *Oswin v. Shaw,* 129 N.J. 290, 307, 609 A.2d 415, 423-24 (1992)]." *Washington,* 74 Lanc. L. Rev. at 560-61.

In *Washington* we observed:

"Defendant's motion is before us on undisputed facts. Plaintiff, a limited tort elector,[3] injured his ankle in an automobile accident. Although his pain persists to some degree, plaintiff has recovered sufficiently to return to work and resume most pre-injury activities." *Id.* at 559.

The instant facts are, although different, equally undisputed. Before us from both parties are extensive medical records of numerous treating physicians, interrogatory responses, deposition testimony, and other documentary evidence. Taken together with the complaint, these sources establish that plaintiff Ralph M. Hassinger suffered, inter alia, "herniated lumbar disc at L4-L5; right S1 lumbar radiculopathy; lumbago; [. . .] shock to his nerves and nervous system [. . .]."[4] (Com-

---

3. (Footnote 2 from *Washington* opinion.) The limited tort option provides that, in exchange for a lower premium rate, an insured may waive the right to bring suit for noneconomic damages—such as pain and suffering—incurred in a motor vehicle accident.

4. That defendant's denial of this allegation in the November 4, 1993 complaint was formalistic in nature—"denied as a conclusion of law to which no response is required"—is born out by subsequent discovery establishing some injury to Mr. Hassinger. Remaining at issue is merely the degree of impairment as it affects claimant's life: does it constitute the legally cognizable "serious injury" necessary to overcome his voluntary waiver of full tort coverage and enable him to pursue noneconomic damages?

plaint, ¶8) While not equating an ankle injury with back problems of the type sustained herein, we believe they are more similar than different in the limited tort context: both are painful, possibly permanently so; both restricted their sufferers' post-trauma activities; both affected job performance; and, consequently, both impacted the lives of the injured and of those close to them. Accepting plaintiff's unsworn exhibits and factual contentions in his moving papers as true, we observe he suffers from continued pain, restriction on activities, and difficulties of the type associated with soft tissue injury.

After the accident, plaintiff treated with a variety of doctors. Initially permitted by Dr. Crimmel to return to work at Super Rite Foods shortly after the injury if he felt well enough, plaintiff returned to her only several weeks later complaining of increased back pain. A July 21, 1992 MRI showed disc herniation without significant nerve root compression. When he saw Dr. Tuffaha on August 5, 1992, plaintiff was well enough for referral to physical therapy and work hardening, though advised not to work. A September 2, 1993 follow-up found plaintiff in less pain and to have progressed enough to stop therapy and begin exercising at home. By mid-October, plaintiff returned to work, but saw Dr. Tuffaha again before Christmas for increased lower back pain; he was again referred to therapy and advised not to work for several weeks. This pattern of work and relapse continued through 1993 and another MRI revealed, to both Dr. Tuffaha and consulting Dr. Shears, improvement in plaintiff's bulging discs and no abnormalities.

During this time, a urological exam by Dr. Mheta revealed no objective source of plaintiff's pain radiating down his right leg, and a February 4, 1994 evaluation

and MRI review by Dr. Parry yielded a normal neurologic exam and advice that surgical treatment was not indicated. Just before plaintiff lost his Super Rite job in November 1994 for absences and restrictions on lifting, Dr. Tuffaha's October 17, 1994 evaluation noted plaintiff's complaints of severe lower back pain when lifting and his inability to be assigned a light duty job. However, plaintiff began working full-time in February 1995 for Standard Steel (Burnham, PA) as a forklift operator in a position requiring no lifting or bending, and is still so employed.

In addition, plaintiff has had to curtail activities such as coaching his son's baseball team, playing various "ball sports" with his son, visiting "with family and friends almost every weekend," hunting frequently (now, only infrequently and not as vigorously as before the accident), and household chores involving lifting or bending. An IME by Dr. Litton on March 14, 1996 confirms that, although plaintiff's intermittent pain is likely to persist, he has been able to perform his employment duties with Standard Steel, as well as return to such normal activities as throwing a ball with his children, playing golf, and even engaging in vigorous work or athletics at home for short periods. Finding that Mr. Hassinger had full range of motion in his lower back and lacking objective evidence for the source of pain, Dr. Litton based his belief it would persist on the fact it had done so for over two years.

Although more severe than the inconvenience found in *Washington,* Mr. Hassinger's condition does not rise to the level of serious impairment. Even the *Dodson* focus on "nature and extent" of impairment—serious impact for extended period, substantial interference with plaintiff's normal activities and not only slight limitation—does not flag plaintiff's soft tissue problems

as particularly serious. After resting for a few days, plaintiff was quite literally "back on his feet" before acute pain led him back to the doctor. He entered upon a one and one-half year period of intermittent doctor visits, objective testing, and physical therapy which, while aiding his recovery, determined he was not a surgical candidate. Although unable to perform his Shop Rite job involving heavy lifting (up to 80 lbs.) and losing it in November 1994, he procured an apparently similar job with Standard Steel as a forklift operator without the lifting component. Similarly, while not able to "roughhouse" with his children as before, Mr. Hassinger has returned to many of his less vigorous pre-accident activities.

Not simply *any* impairment will suffice to defeat the limited tort election, and this court holds that plaintiff's injuries, while no doubt of real concern to him, are not as a matter of law sufficiently serious to resurrect his right to pursue noneconomic damages as if he were paying the full tort premium.[5] Plaintiff is most assuredly not being denied his right to pursue full compensation for his injuries, including litigating his lost wages and lost earning capacity claims to their fullest. There is, moreover, no dispute that he selected the lower cost limited tort option after discussion with his insurance

---

5. As the *Dodson* court emphatically stated,

"The Pennsylvania MVFRL enacted a two tier recovery system in order to lower insurance rates. It offers insureds different levels of protection based on the premium paid. (citation omitted) To permit all cases where plaintiffs claim serious impairment of body function routinely to go to the jury would not reign [sic] in cost but would prove as expensive as an unrestricted right to sue. To allow non-serious injury cases to proceed through trial to a jury would frustrate the legislature's goal of reducing litigation and the cost of insurance." *Id.* at 494, 665 A.2d at 1231.

agent; nor is there a claim that he did not understand his choice, or that the agent misled him in any way.[6]

Giving every reasonable inference to plaintiff's evidence, we conclude nonetheless that the evidence reveals an objectively identifiable injury which has resolved, leaving slight limitation. While subjective complaints of pain may seriously impair body function, such is not the case here. We conclude, therefore, that the record shows no serious interference with plaintiff's daily life and hold, consequently, that he suffered no serious impairment in body function.

For the foregoing reasons and upon consideration of all papers relevant to defendant's motion for summary judgment and plaintiff's opposition thereto, the court enters the following:

## ORDER

Defendant's motion for partial summary judgment is granted and plaintiff is precluded from recovering noneconomic damages in this case pursuant to *Dodson v. Elvey.*

---

6. Rather, plaintiff's own deposition testimony indicates he comprehended that he was giving up significant rights (see plaintiff's dep., 65-66, attached as Exhibit D to defendant's motion):

"Q. When you chose the limited tort option did you understand what the changes would be from the limited tort to the full tort option when the agent discussed that with you?

A. He said about the limited tort, about suing, he went over that.

Q. He told you what?

A. About giving up the option to sue.

Q. Okay.

A. That was with the limited tort.

Q. You understood that when you chose that?

A. Yeah."